17447

DELMAR STUDIOS OF the CAROLINAS, Respondent, v. Donald
L. KINSEY, Appellant

(104 S. E. (2d) 338)

314

*Messrs. Roberts, Jennings, Thomas & Lumpkin,* of Columbia, *for Appellant,*

*Messrs. Robinson, McFadden & Dreher,* of Columbia, *for Respondent,*

July 14, 1958.

OXNER, Justice.

This action was brought by Delmar Studios of the Carolinas, (hereinafter called Delmar) to enjoin Donald L. Kinsey, a former employee, from violating his covenant not to engage in business in competition with it. Upon the filing of the complaint, a temporary restraining order was issued on January 31, 1958. On February 6, 1958, the Court, after considering the affidavits offered by the parties, issued an injunction *pendente lite* upon the filing of a bond by Delmar in the sum of $2,500.00. Later testimony was taken and on March 28th, the Court issued a permanent injunction.

At the trial on the merits, Kinsey offered no testimony. That of Delmar disclosed the following facts:

Delmar is a North Carolina corporation with its principal office in Charlotte. It is engaged in the business of taking photographs of students and selling school yearbooks, and operates in parts of North Carolina and Georgia and

in the entire state of South Carolina. The business was started by V. S. Renfroe in 1945. It was incorporated in 1951. Renfroe is the principal officer and stockholder and is also the controlling stockholder in Delmar Studios, Inc., which is engaged in similar operations in other areas and does some photographic finishing work for Delmar of the Carolinas.

Delmar employs salesmen who solicit contracts and take pictures. Each is assigned a certain territory under a sales manager and is usually kept in the territory where first assigned. The salesmen are paid on a commission basis although each has a drawing account. Solicitation of business is largely done through school administrators and teachers. Personal contacts with them play an important part in obtaining and keeping business. Most schools renew their contracts each year although some change to other photographers. Delmar seems to have the largest share of business in the territory in which it operates. During the school year 1957-1958, it had 1,064 contracts with various schools in the Carolinas and Georgia. At the time of the trial it had about 17 men working in this territory.

Kinsey entered the employ of Delmar in January of 1956. As did other employees, he signed a contract containing a covenant that he would not for a period of two years following the termination of his employment engage in competitive work in the area described therein. On September 22, 1956, this contract was superseded by the one now in issue. The January contract is not contained in the record but, according to statements in the briefs, the only difference between the two is in the scale of commissions. The covenant in the September, 1956 contract under which the injunction was issued reads as follows:

"The photographer shall not, during the period of two (2) years next following the date of the termination for any reason of his employment with Delmar, directly or indirectly for himself or as the agent of, or on behalf of, or in con-

junction with any person, firm, association or corporation except as the representative or in the employ of Delmar, engage in or become financially interested in the business of soliciting and procuring from schools within the Territory applications for photographs or yearbook contracts, or in the business of taking of photographs in the fulfillment of any such contract.    *    *    *."

The "Territory" mentioned in the foregoing contract covered about three-fourths of the State of North Carolina, all of South Carolina, and eleven counties in Georgia. *This included the entire area in which Delmar operated.* The contract provided, and Renfro testified, that Kinsey was to work in such areas within this territory as directed by his sales manager. In 1956 one Cecil Carnes was the manager of an area covering most of South Carolina and eleven counties in Georgia. Kinsey was directed to work under him. There were two other salesmen under Carnes. The territory under Carnes' supervision was split among the three salesmen in a way which gave each approximately the same business potential. Kinsey was assigned to about ten counties in South Carolina and six in Georgia, nearly all of which bordered on the Savannah River. With insignificant exceptions, he was only permitted by Carnes to solicit business and contact school officials in those counties to which he had been assigned. The result was that he could solicit business only in a small part of South Carolina and Georgia. At no time did he solicit business or take photographs within the State of North Carolina or the northwestern part of South Carolina.

When Kinsey was employed he was trained for several weeks in salesmanship by Carnes and in photography by one of Delmar's employees. Although it usually took from four to six months for a salesman to produce on a profitable basis for Delmar, Kinsey was able to do so within two or three weeks after he was employed. He had a rather successful year in 1956 and desired to expand his activities. About February 1, 1957, an arrangement was made between Renfroe and Kinsey to the effect that Kinsey would

discontinue working for Delmar of the Carolinas and would be employed as sales manager in the State of Missouri for Delmar Studios, Inc., an affiliate of Delmar of the Carolinas. A new salesman was employed to take over the territory in which Kinsey formerly worked and he went to Missouri. He was there given a drawing account. He worked in this capacity until about October 1, 1957. The venture proved an unprofitable one both to Kinsey and his employer. About October 1, 1957, Kinsey returned to South Carolina and assisted in taking photographs in various counties in South Carolina and Georgia. Most of this photography was done in the area in which he had been formerly employed. At first there was no complaint by the salesmen but later they objected to Kinsey working in their territory. During the latter part of December, 1957, Kinsey told Renfroe that he would not return to Missouri and expected to go into some other business. Accordingly, he terminated his employment with Delmar about January 1, 1958. (The contract provided that either party could terminate it upon giving fifteen days notice to the other.) Shortly thereafter he began soliciting school contracts for a competitor of Delmar's in portions of South Carolina and Georgia. This suit followed.

The sole question for determination is the validity of the covenant relating to restraint of employment contained in the contract between Kinsey and Delmar. One of the most elaborate opinions in this field is that of Judge Hoover (Court of Common Pleas of Ohio, Cuyahoga County, 1952), *Arthur Murray Dance Studios of Cleveland v. Witter,* 105 N. E. (2d) 685, 687. As Judge Hoover said in that opinion: "This is not one of those questions on which the legal researcher cannot find enough to quench his thirst. To the contrary there is so much authority it drowns him." He then cites voluminous authorities under seven seas: the periodical sea, the sea of annotations, the sea of encyclopedias, the sea of treatises, the restatement sea, the digest sea and Ohio's own sea. Fortunately, it is not necessary for us to fish in all of these seas. It is conceded that the contract in question

was made in North Carolina and is governed by the law of that State.

The courts of North Carolina regard with disfavor contracts restraining employment and make a distinction between a restrictive covenant attached to a contract of sale and one which forms a part of a contract of employment. *Kadis v. Britt,* 224 N. C. 154, 29 S. E. (2d) 543, 546. It was there stated: "The distinction rests upon a substantial basis, since, in the former class of contracts we deal with the sale of commodities, and in the latter class with the performance of personal service—altogether different in substance; and the social and economic implications are vastly different * * *. From the beginning argument against restraint of employment was—and still is—more powerful than those based on the evils of monopoly incident to restrictions in sales contracts. Restraint of employment tends not only to deprive the public of efficient service, but to impoverish the individual and make him a public charge at the expense of the taxpayer."

However, under the North Carolina decisions, a covenant by an employee that for some period of time after the termination of his employment he will not engage in business in competition with his employer "is lawful if the restriction is no more than necessary to afford a fair protection to the covenantee and is not unduly oppressive on the covenantor and not injurious to the interests of the public." *Sonotone Corporation v. Baldwin,* 227 N. C. 387, 42 S. E. (2d) 352, 354. As pointed out in *Kadis v. Britt, supra,* the test of the validity of such covenant is the reasonableness of the restraint it imposes. To meet this test successfully, the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest. *Moskin Brothers, Inc. v. Swartzberg,* 199 N. C. 539, 155 S. E. 154; *Comfort Spring Corporation v. Burroughs,* 217 N. C. 658, 9 S. E. (2d) 473.

In *Comfort Springs Corporation v. Burroughs, supra,* the Court held invalid a covenant by an employee not to work for a certain competitor of plaintiff anywhere in the United States for a period of five years after the termination of his employment. The Court concluded that this covenant was unreasonable in territorial extent and unnecessary for the protection of the employer's business.

In *Noe v. McDevitt,* 228 N. C. 242, 45 S. E. (2d) 121, 123, plaintiff was engaged in the business of selling equipment and supplies used in the operation of "beauty" salons. Defendant was employed as a salesman in the States of North Carolina and South Carolina and agreed in his contract of employment that he would not work as a salesman in this territory for any company in a similar business for a period of five years following termination of his employment. Although his territory covered all of both States, defendant only worked in the eastern part of North Carolina. After working for the plaintiff for approximately two years, defendant terminated his contract of employment and entered the employ of a competitor selling a similar type of merchandise and called on customers which he had theretofore contacted as an employee of the plaintiff in the eastern part of North Carolina. The Court held that the territory covered in the covenant was too extensive for the reasonable protection of the plaintiff's business. It was pointed out that the plaintiff had "not definitely shown any clientele throughout the much broader territory here involved such as would correlate the protection sought with any need of his business."

> We do not think the covenant in the instant case can be sustained under the North Carolina decisions, as we interpret them. The burden was on Delmar to establish the reasonableness of this covenant *Kadis v. Britt, supra,* 224 N. C. 154, 29 S. E. (2d) 543; *Noe v. McDevitt, supra,* 228 N. C. 242, 45 S. E. (2d) 121, and this it has failed to do. The time limitation is reasonable but it is not shown that the extent of the territory included is necessary for the protection of Delmar's business. While under the

terms of the contract, Kinsey could have been assigned by the sales manager to any of the territory described therein. he was actually assigned to only a small portion of it. With insignificant exceptions, he only worked in the counties of South Carolina and Georgia bordering on the Savannah River. His employment, therefore, only brought him in contact with the customers of Delmar in this area. There is no showing that he became acquainted with those in other parts of the territory mentioned in the contract or that it was contemplated that he would later work therein. It affirmatively appears that he never worked in North Carolina or the northwestern part of South Carolina. It must be remembered that Kinsey was a mere salesman and not a manager, a distinction recognized in the North Carolina decisions. It is true that Renfroe testified that it was the policy of the company to furnish its salesmen with cards showing the name of each school solicited, the history of the solicitation of such school over a period of five years, and the amount which each customer had received in commissions. However, he did not say, but merely assumed, that these cards were furnished Kinsey. We cannot substitute assumption for proof. It is not shown that Kinsey was furnished cards of customers outside of the area in which he worked. In short, no explanation is found in the record for extending this covenant over the entire area served by Delmar. The burden was upon Delmar to show that this was necessary for the reasonable protection of its business and it has not done so.

In *Wisconsin Ice & Coal Co. v. Lueth,* 213 Wis. 42, 250 N. W. 819, 820, the Court held invalid a covenant whereby one who was employed to deliver ice agreed that for two years after leaving his employment he would not engage in competition with his employer in a certain specified territory which was shown to be larger than that in which he later worked. The Court said:

"The principal question upon this appeal is whether the territory covered by the restrictive covenant was unreasonably large in view of the circumstances. As is pointed out in

the *Milwaukee Linen Supply Company case* [*Milwaukee Linen Supply Co. v. Ring,* 210 Wis. 467, 246 N. W. 567], a contract in restraint of trade may be valid as applied to one set of circumstances and invalid as applied to another set. The propriety of a territorial restriction must be considered in connection with the circumstances of the parties and the activities of the employee. When a business is sold, together with its good will, a restrictive covenant limiting the right of the vendor to engage in a similar business may not be broader in its territorial scope than the extent of the business sold, the good will of which is sought to be protected. *General Bronze Corp. v. Schmeling,* 208 Wis. 565, 243 N. W. 469. So, in the case of the employee, the restrictive covenant must bear some relation to the activities of the employee. It must not restrain his activities in a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his employer. There is difficulty, however, in determining how broad this restriction may be. Defendant claims that under the rule of the *Milwaukee Linen Supply Co. case* the restriction in cases of employees whose employment takes them over a definite route must not be greater than the route which limited their activities. Such a rule may easily be applied in cases where the employee has for some years prior to the contract been working for the employer in definitely limited territory, as was true in the *Eureka Laundry Company Case,* and where the restriction merely relates to this territory.

"In such a case the restriction would clearly be valid so far as the territorial extent of it is concerned, and it is to be doubted whether the territory covered by the restrictive covenant could be further enlarged as a part of a new contract of employment. The principal difficulty arises, however, where the contract of employment containing the restrictive covenant initiates the relation of employer and employee. There the employee, at the time of executing the contract, has as yet no established route which will form a reasonable limit to the scope of the restrictive covenant. He may be assigned to

work at any place within the territory actively canvassed by his employer. May the employer, in such a situation, designate a territory less than the entire territory covered by its business but greater than that which will be worked at any one time by the employee, and perhaps greater than ever will be worked by the employee during the course of his employment, and designate this territory as that to which the noncompeting agreement is applicable? There is no question, from an examination of the record, that the territory described in the contract here involved is more extensive than that in which defendant worked for the Kilbourn Company. It is larger than that in which defendant, subsequent to the making of the contract, worked for the plaintiff; in fact, it was large enough, according to the evidence, to be cared for by some forty-five drivers, and larger than the defendant could work, unless his employment for the plaintiff extended over a very long period of time. It may be argued, where the employer might at any time designate any portion of this territory to be canvassed and served by the defendant, that a restriction as to all of it is reasonable and necessary for plaintiff's protection. If such a contention is valid, a restrictive covenant could only be limited geographically by the territorial extent of the employer's business. In this case the employer did business over the whole of the city of Milwaukee and Milwaukee county, and such a theory as is suggested above would allow the employer to exact a covenant covering the entire county, upon the theory that it had the right at any time to assign the employee to any portion of the territory, and that such restriction might be necessary for its protection. We think this would break down all proper limitations upon this type of covenant. It is generally proper for the employer, by such a contract, to exact a covenant not to compete in such territory as may constitute the field of the employee's activities, but the covenant can go no further than this."

Also, see Annotation in 43 A. L. R. (2d), beginning on page 162.

The following North Carolina cases relied upon by Delmar are distinguishable on the facts:

In *Scott v. Gillis,* 197 N. C. 223, 148 S. E. 315, 316, the covenant of the employee, an accountant, was restricted to soliciting or accepting accounting business during a certain period "from person, firm, or corporation for whom the defendant performed services while in the employment of the plaintiff."

In *Moskin Brothers, Inc. v. Swartzberg, supra,* 109 N. C. 539, 155 S. E. 154, the defendant when employed as manager of plaintiff's retail clothing store in High Point, North Carolina, agreed that for a period of two years after leaving his employment, he would not accept employment in any competitive business within fifteen miles of High Point or other store of plaintiff's in which defendant had been employed. It will be noted that the restriction was limited to an area in which it could reasonably be said that the defendant had come in contact with plaintiff's customers. Moreover, in this case the employee was a manager of one of plaintiff's stores, thereby giving him a broader knowledge of plaintiff's business than ordinarily would be acquired by a mere salesman.

In *Orkin Extermination Co., Inc. v. Wilson,* 227 N. C. 96, 40 S. E. (2d) 696, plaintiff employed defendant as manager of its exterminating business in thirteen counties in and around Winston-Salem, North Carolina. The restrictive covenant specified that the employee would neither solicit plaintiff's customers nor engage in pest control business in such territory for a period of two years after his employment ceased. It will be thus observed that the territory was restricted to that in which the defendant worked.

In *Sonotone Corporation v. Baldwin,* 227 N. C. 387, 42 S. E. (2d) 352, 353, defendant was employed as district manager of the sale of plaintiff's products (hearing aids) in forty counties in North Carolina and nine contiguous counties in South Carolina. The restrictive covenant cov-

ered these counties and "an area extending fifty (50) miles on each side thereof" for a period of one year after the termination of employment. The Court upheld the covenant as being reasonable for the employer's protection both in respect to time and territory but the injunction granted was limited to the 49 counties, and the 50-mile radius feature was not discussed. The Court emphasized the fact that defendant was a district manager and not a mere employee. It will be further noted that the territory in this covenant was much more restricted than that in the instant case.

In view of our conclusion that the territorial extent of the restrictive covenant in this case is broader than reasonably necessary for the protection of Delmar's business, it must be declared invalid. Under *Noe v. McDevitt, supra,* 228 N. C. 242, 45 S. E. (2d) 121, 123, we cannot by splitting up the territory make a new contract which would be reasonable in space. As there stated, the contract made by the parties "must stand or fall integrally."

Judgment reversed and the injunction granted by the lower Court is dissolved.

STUKES, C. J., and TAYLOR, LEGGE and Moss, JJ., concur.