**J. R. PRENTICE, d/b/a American Breeders Service and Don L. Hoyt, d/b/a Ozark Proved Sire Service, Plaintiffs-Respondents,**

v.

**Ralph F. WILLIAMS, Defendant-Appellant.**

No. 7731.

Springfield Court of Appeals.

Missouri.

May 11, 1959.

Motions for Rehearing or to Transfer Overruled June 2, 1959.

J. A. Appelquist, Mount Vernon, Bert Hurn, Neosho, for defendant-appellant.

Douglas & Douglas, Neosho, Hardy Croxton, Rogers, Ark., for plaintiffs-respondents.

STONE, Presiding Judge.

Defendant, Ralph F. Williams, appeals from a decree finding the issues in favor of plaintiff, J. R. Prentice d/b/a American Breeders Service (hereinafter referred to as ABS), and against defendant, and enjoining defendant "from artificially inseminating cattle in Lawrence County, Missouri for a period of two years from May 1, 1957." The decree of the trial chancellor denied injunctive relief to the other plaintiff, Don L. Hoyt d/b/a Ozark Proved Sire Service; and, since Hoyt has not appealed, we are not concerned with the propriety of the finding against him. Section 512.160(2), RSMo 1949, V.A.M.S.; Missouri-Kansas-Texas R. Co. v. Freer, Mo.App., 321 S.W.2d 731, 741(11), and cases there cited.

In the Fall of 1948, Williams went to work for Harry Rollins of Carthage, Missouri, a pioneer in the artificial insemination business in Southwest Missouri; and, when Rollins sold his bulls to ABS, Williams entered the employ of ABS under a written "Technician's Employment Contract" dated October 19, 1951, which provided that his employment was to "inseminate all cows presented for service in the service area," loosely described as "Central & So. Lawrence Co.," with semen furnished and at fees established by ABS. Williams continued in the employ of ABS under similar written contracts until May 1, 1957. In the last such "Technician's Employment Contract" dated January 25, 1955 (hereinafter referred to as the employment contract), the service area was described as "Lawrence county, and South-

ern Dade county, Missouri"; and, paragraph 9 of the employment contract contained a restrictive covenant (as had all prior contracts between ABS and Williams) that: "While employed under this contract, and any extension or renewal thereof, and as long as the Employer (ABS) carries on the business of artificial insemination of cattle during the two years after the termination of such employment, the Technician (Williams) shall not * * *, in the service area, artificially inseminate or take or solicit orders for the artificial insemination of cattle, with semen other than such as shall be furnished to the Technician by or through or with the permission of the Employer."

In May 1957, ABS sold to Don L. Hoyt of Springdale, Arkansas, "all right, title and interest of ABS in and to ABS's retail artificial inseminating business" in seven Missouri counties, including Lawrence County, and Hoyt became the "distributor" for ABS semen in those counties. Under date of May 1, 1957, Hoyt as "distributor" and Williams as "purchaser" entered into a written "Contract for the Sale of Fresh Semen" (hereinafter referred to as the fresh semen sales contract). In this contract, the parties agreed, among other things, "that the purchaser (Williams) is an independent contractor and the distributor (Hoyt) shall not direct, guide and supervise the manner in which the purchaser does his work" and "that the purchaser has no vested property right under this contract, but only a franchise to sell American Breeders Service semen in the above described territory for so long as this contract is in effect." The description of the territory in the fresh semen sales contract, to-wit, "Lawrence Co Mo, less a portion in SW corner, less a strip on east side," was such that it would have been impossible, from the description itself, to have defined and delimited the territory in which Williams was granted "a franchise to sell" ABS semen. Compare Athletic Tea Co. v. Cole, Mo.App., 16 S.W. 2d 735, 736(3).

The fresh semen sales contract contained *two* restrictive covenants. The *first* was that "the purchaser (Williams) during the term of this contract, and for a period of two years after the termination of such agreement shall not (either on his own account or of a partner, representative, or otherwise) inseminate cows with semen, either fresh or frozen, other than that furnished by distributor (Hoyt)," and that "after the termination of this agreement, purchaser shall not have the right to inseminate any cows serviced under this contract." The *second* was contained in another paragraph which embodied in the fresh semen sales contract by reference the restrictive covenant hereinbefore quoted from paragraph 9 of the employment contract of January 25, 1955. Although the fresh semen sales contract was "approved" by ABS, ABS was not a party thereto.

Under date of September 10, 1957, Ozark Proved Sire Service Company of Springdale (an Arkansas corporation controlled by Hoyt) as distributor and Williams as purchaser executed another "Contract for the Purchase and Sale of American Breeder Service Proved Sire Semen" which was to have become effective "at time of frozen semen delivery." Since no frozen semen was ever delivered to Williams, this contract by its plain terms never became effective; and, upon trial of the case, Hoyt readily so agreed. On October 21, 1957, Hoyt as "Pres., Ozark Proved Sire Service Company" (the Arkansas corporation) served on Williams a written "Notice of Termination of Contract," in which it was stated that "pursuant to franchise contract dated May 1, 1957 between Ozark Proved Sire Service Co. and Ralph Williams, that (30) days notice is hereby given * * * that aforesaid contract shall be cancelled and set aside, and that any employment status, contractural (sic) or otherwise, shall be cancelled and held for naught as between the parties hereto." Treating this as a termination of all contractual relationships and obligations, Williams entered into a "Dealer's Con-

tract" with Eastern Iowa Breeders on November 21, 1957; and, during the period from that date to the granting of a temporary injunction herein on January 3, 1958, Williams serviced with Eastern Iowa semen about three hundred cows in Lawrence County, some of whom previously had been serviced by him with ABS semen.

■ Thus far, the facts in the instant case have tracked closely those in the companion case of Prentice v. Rowe, Mo.App., 324 S.W.2d 457, but we now reach a point of wide and (we think) significant factual divergence. As pointed out in the Rowe opinion, supra, the undisputed testimony in that case was that, within a few days after November 20, 1957, Hoyt's individual distributorship for ABS semen was terminated, and ABS "took over" the service area specifically described in the contracts there involved, to-wit, McDonald County, Missouri, and hired a technician therein who was still working as an employee of ABS at the time of trial. There is no similar testimony in the instant record, which we must take as it comes to us. Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 433.

In this case, Hoyt testified that, from and after June 3, 1957, the date on which Ozark Proved Sire Service Company (hereinafter referred to as the Arkansas corporation) was formed, the Arkansas corporation purchased semen from ABS and resold it to Williams and others; and, when Williams' counsel put this "question" to Hoyt on cross-examination, "it is a correct statement as a matter of fact that the Ozark Proved Sire Service Company was in the insemination business *from and after June 3, in Lawrence County up to the present time,*" the unequivocal reply was "yes." (All emphasis herein is ours.) Witness Divine, "extension representative" of ABS and the only employee of ABS who testified, readily agreed with Williams' counsel that Lawrence County (and other territory) "had been sold to Mr. Hoyt" in

May 1957; and, in response to the direct inquiry whether "ABS sold their right, title and interest in the insemination business to Mr. Hoyt," Divine gave the unqualified answer, "yes." Divine thought that ABS had continued to sell semen to Hoyt individually until December 4, 1957; but, regardless of whether ABS began to deal with the Arkansas corporation immediately after its formation on June 3, 1957 (as Hoyt said), or not until December 4, 1957 (as Divine said), the testimony of Divine and Hoyt was clear and in agreement on the fact that, from December 4, 1957, to the time of trial, ABS sold semen to the Arkansas corporation as a distributor for resale so that, as Divine put it, ABS simply dispensed semen *"indirectly"* in Lawrence County.

■ ABS predicates its claim for injunctive relief upon Williams' alleged violation of the restrictive covenants in the fresh semen sales contract of May 1, 1957. Stated in general terms, the law now is that a covenant restraining an employee, upon termination of employment, from competing with his former employer is valid and enforceable if it is reasonable as to the employer, the employee and the public, when viewed in the light of all of the facts and circumstances of the particular case under consideration. See the multitude of authorities collected and classified in Arthur Murray Dance Studios of Cleveland v. Witter, Ohio Com.Pl., 105 N.E.2d 685, 691–693, a studious and scholarly exposition on restrictive covenants. To be reasonable, the restraint usually must be qualified as to both time and area and must be no greater than fairly required for protection of the person for whose benefit it is imposed. Renwood Food Products v. Schaefer, 240 Mo.App. 939, 951, 223 S.W.2d 144, 151.

■ By the fresh semen sales contract, Hoyt, a distributor, granted to Williams, an independent contractor, "only a franchise to sell American Breeders Service semen" in Lawrence County and "Southern

Dade county" but the *first* restrictive covenant in that contract, although limited as to time, purported to prohibit Williams from any artificial insemination of cattle (except with ABS semen furnished by Hoyt) *without limitation as to area.* Compare Mallinckrodt Chemical Works v. Nemnich, 83 Mo.App. 6, 15–16, affirmed 169 Mo. 388, 69 S.W. 355. A restrictive covenant limiting an individual in the exercise of pursuit of his occupation is in restraint of trade [Corbin on Contracts, Vol. 6, § 1392, loc. cit. 509; Restatement of Contracts, Vol. 2, § 513, p. 987], and the burden of establishing its validity, by showing that it is reasonable, rests upon the party claiming its benefit. Arthur Murray case, supra, 105 N.E.2d loc. cit. 693(6) and authorities there collected; Grace v. Orkin Exterminating Co., Tex.Civ.App., 255 S. W.2d 279, 283(2); Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543, 545(2), 152 A.L.R. 405. As in the Rowe case, supra, there is no evidence in this case as to the area within which ABS semen has been or is sold; and, on the entire record, we cannot find that the *first* restrictive covenant, wholly unlimited as to area, was reasonable and no greater than fairly required for protection of ABS. Compare Delmar Studios of the Carolinas v. Kinsey, 233 S.C. 313, 104 S.E.2d 338. Accordingly, we again hold that the *first* restrictive covenant was invalid.

■ The *second* restrictive covenant (as embodied in the fresh semen sales contract of May 1, 1957, by reference to paragraph 9 of the employment contract of January 25, 1955) imposed the restraint that, while Williams was employed by ABS and *"as long as (ABS) carries on the business of artificial insemination of cattle* during the two years after the termination of such employment,"* Williams would not inseminate cattle (except with semen furnished by, through or with the permission of ABS) in the described service area. Although thus qualified both as to time and as to area [Haysler v. Butterfield, 240 Mo. App. 733, 218 S.W.2d 129; Northeast

Georgia Artificial Breeders Ass'n v. Brown, 209 Ga. 547, 74 S.E.2d 660; annotation 43 A.L.R.2d·94; annotation 41 A.L.R.2d 15], such restrictive covenant was in restraint of trade and personal liberty and it should not be construed to extend beyond its fair import. Prentice v. Rowe, supra; State ex rel. Youngman v. Calhoun, Mo.App., 231 S.W. 647, 649; Athletic Tea Co. v. Cole, supra, 16 S.W.2d loc. cit. 736(2); Arthur Murray case, supra, 105 N.E.2d loc. cit. 693, 695(5) and authorities there collected. Emphasizing that, after termination of Williams' employment by ABS on May 1, 1957, when he became an independent contractor under the fresh semen sales contract, the restraint imposed by the *second* restrictive covenant was for *"as long as the Employer (ABS) carries on the business of artificial insemination of cattle* during the two years after the the termination of such employment,"* Williams' counsel insist that ABS is entitled to no injunctive relief for the reason, among others, that ABS sold its artificial insemination business to Hoyt in May 1957 and thereafter did not carry on the business of artificial insemination of cattle in Lawrence County, Missouri, within the contemplation and intendment of the *second* restrictive covenant. On the transcript presented to us, we are constrained to agree.

We have not overlooked the evidence adduced on redirect examination of witness Divine when capable counsel for ABS, apparently sensing this Achilles heel in their case, elicited testimony that ABS had kept, and intended to maintain in the future, "field men in this area and in Lawrence County for the promotion of business," and that ABS also had "an advertising set-up" (not, however, explained); and, we recognize that, of course, ABS has a live and· continuing interest in sales of ABS semen in territory, such as Lawrence County, "sold" to a distributor. However, we are· not persuaded that such interest in the promotion of sales of ABS semen, which is of the same garden variety as the interest

which every manufacturer and supplier has in the sales of his or its product(s), constitutes carrying on the business of artificial insemination of cattle within the contemplation and intendment of the restrictive covenant under consideration; and, we think that our conclusion that ABS has not carried on the business of artificial insemination of cattle in Lawrence County since May 1957 is suggested and supported by the very language of the contract between ABS and Hoyt dated May 21, 1957, which not only provided that "ABS hereby sells and Distributor (Hoyt) buys all right, title and interest of ABS in and to ABS's retail artificial inseminating business in the above mentioned Service Area," to-wit, seven Missouri counties including Lawrence County, but also contained the significant and revealing statement that "Distributor recognizes that ABS has expended substantial amounts in *the prior operation of the artificial inseminating business in southwest Missouri now conducted by Distributor.*"

 With no showing in this case that, during the period of two years after termination of Williams' employment by ABS on May 1, 1957, ABS "took over" Lawrence County and re-established its artificial insemination business therein on substantially the same basis as such business was being conducted when the employment contract of January 25, 1955 (containing the covenant subsequently carried forward as the *second* restrictive covenant in the fresh semen sales contract of May 1, 1957) was executed, we think that injunctive relief to ABS may not be granted herein without such loose and liberal construction of that restrictive covenant as would do unjustified violence to the salutary and settled principle that a covenant of this character should not be extended beyond its fair import. See authorities cited supra. And, mindful also that the remedy of injunction, frequently characterized as "the strong arm of equity," is a summary, transcendent and extraordinary remedy, may not be invoked as a matter of course,

and should be exercised sparingly and only in clear cases [Barnhart v. Ripka, Mo. App., 297 S.W.2d 787, 792(10); Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527, 537; 28 Am.Jur., Injunctions, § 24, p. 217], we are satisfied that the injunction nisi may not be sustained.

Accordingly, the decree of the trial court is set aside and the cause is remanded with directions to enter a decree dismissing plaintiffs' bill in equity with prejudice as to both plaintiffs, ABS and Hoyt, and taxing the costs against said plaintiffs, share and share alike. Costs upon this appeal are taxed against respondent ABS.

McDOWELL and RUARK, JJ., concur.