TRIANGLE LEASING COMPANY, INC. v. ROBERT F. McMAHON, MARILYNNE M. McMAHON, JOSEPH G. PRIEST, AND WILMINGTON AUTO RENTAL, INC.

No. 8810SC1351

(Filed 7 November 1989)

1. **Appeal and Error § 6.2 (NCI3d)— preliminary injunction— covenant not to compete—appealable**

An appeal lay from an interlocutory preliminary injunction restraining defendants from violating a covenant not to compete where defendants would lose a substantial right, that of practicing their livelihood in North Carolina, prior to final determination on the merits.

**Am Jur 2d, Appeal and Error §§ 50 et seq., 387.**

2. **Master and Servant § 11.1 (NCI3d)— covenant not to compete— territorial limitation—unenforceable**

A covenant not to compete was unenforceable because its territory was unnecessarily broad where defendant Robert McMahon had executed an employment agreement with plaintiff which prohibited defendant from competing with the company throughout North Carolina, but the record showed that defendant Robert McMahon's access was limited to Wilmington customers and business confidences related to the Wilmington market. The burden of persuasion rests on the employer to show necessity for protection which would extend outside the area in which the employee worked, but the company showed no facts to support its contention that McMahon's attempts to compete affected the company's business in its other two locations or in the whole of North Carolina outside the Wilmington area.

**Am Jur 2d, Master and Servant § 106; Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 543, 544, 566-568, 572, 576.**

3. **Master and Servant § 11.1 (NCI3d)— covenant not to compete— time limitation—unenforceable due to overbroad territorial limitations**

Time restriction of two years in a covenant not to compete was unenforceable in light of an overbroad territorial restraint. Time and area are not independent and unrelated aspects of

TRIANGLE LEASING CO. v. McMAHON

[96 N.C. App. 140 (1989)]

the restraint, and each must be considered in determining the reasonableness of the other.

**Am Jur 2d, Master and Servant § 106; Monopolies, Restraints of Trade, and Unfair Trade Practices § 569.**

Judge JOHNSON concurring.

Judge COZORT dissents.

APPEAL by defendants from *Allen (J. B.), Judge*. Order entered 31 October 1988 in Superior Court, WAKE County. Heard in the Court of Appeals 8 June 1989.

*Kirby, Wallace, Creech, Sarda, Zaytoun & Cashwell, by John R. Wallace, Peter J. Sarda and Cheryl M. Swart, for plaintiff-appellee.*

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for defendant-appellants.*

GREENE, Judge.

Plaintiff (hereafter "Company" or "plaintiff") and defendant Robert F. McMahon (hereafter "Employee") were parties to a non-competition agreement. Plaintiff requested and was granted a preliminary injunction by the trial court, restraining defendants Robert F. McMahon and Company employee Marilynne M. McMahon from violating the agreement. Defendants Robert F. McMahon and Marilynne M. McMahon appeal.

The evidence presented to the trial court at the preliminary injunction hearing tended to show that the Company and Employee executed an "employment agreement" (hereafter "Agreement") on 9 September 1986. The Agreement provided in pertinent part:

4. Accounts of the Company. Employee expressly covenants and agrees that any and all current business and accounts of the Company, or business and accounts procured by the Employee or Company while employed hereunder, are and shall be the permanent and exclusive property of the Company and for its exclusive benefit; that the records, use and control of all such business and accounts shall be and remain the absolute and exclusive property of the Company.

5. <u>Covenant Not to Compete; Disclosure of Information.</u>
Employee recognizes and acknowledges that the lists and names
of the Company's customers and accounts are a valuable and
unique asset of the Company and that the Company has devoted
and continues to devote consideration [sic] time and expense
in developing business relationships with its customers.
Employee further recognizes the substantial investment made
by the Company in training him and his fellow employees
and the value to him of that training. Acknowledging these
circumstances and in consideration of his employment and the
payment of salary, the undersigned Employee agrees to the
following:

(a) *Upon termination of employment* hereunder for any
reason whatsoever, *Employee will not, for a period of two
(2) years from the date of termination of this Agreement* (ex-
cluding, however, any period of violation or any periods of
time required by litigation to enforce said covenants), *and within
the State of North Carolina or any other state or territory
in which the Company conducts business, directly or indirect-
ly, solicit or attempt to procure the customers, accounts, or
business of Company, or directly or indirectly make or attempt
to make car of* [sic] *truck-van rental sales to the customers
of Company.* For purposes of this Agreement, "soliciting or
attempting to procure the business of Car Truck-Van Rental
or Leasing" of the Company shall include but not be limited
to any business or individual customer of Company for any
other employer for the purpose of selling or otherwise dealing
in Car Van-Truck Rental or Leasing; Employee further agrees
not to divulge the names, addresses, or other information con-
cerning the customers and accounts of the Company or any
other confidential information acquired during employment by
the Company to any person, firm, corporation, association or
other entity for any purpose whatsoever. (Emphasis added.)

Pursuant to the Agreement, Employee became manager of the
Company's Wilmington office on or about 9 September 1986. The
Company was in the business of leasing vans, trucks and automobiles
with offices at the Raleigh-Durham Airport, the Greensboro-High
Point Airport and in Wilmington. In November 1986, the Company
also employed Employee's wife, Marilynne M. McMahon, to work
in the Wilmington office. Employee's wife did not sign an employ-
ment contract or noncompetition agreement. Employee received

TRIANGLE LEASING CO. v. McMAHON

[96 N.C. App. 140 (1989)]

from the Company about ten days of training relating to "procedural policies on how [the Company] wanted the books handled and how [the Employee] was going to send the paper work from Wilmington to Raleigh." Employee was not given any "training or suggestions to how [he was] to approach customers in the Wilmington area to develop the business of [the Company]." Prior to beginning his work with the Company, Employee had approximately thirteen years of experience in the rental car business in Alabama, Georgia and North Carolina. Employee's "job assignment" with the Company included, among other things, "calling on certain accounts." As part of Employee's job, Employee "had knowledge of prices charged" with respect to all Wilmington customer accounts. Employee knew the Company's "bottom line" price for rentals and what it "would do and what [the Company] would not do [about deviating from the 'bottom line']." Employee knew how "far [the Company] would go to set a rate for a customer." The Company maintained a "rate book," which was available to Employee, identifying Wilmington customers by name and by "class of customer." The Company maintained a "retail rate structure" which was published and generally available to the public. The general public did not have access to the "rate structure with respect to specific regular customers" in Wilmington, but Employee did have access to this information. Employee also had access to the "decision makers" or "key persons" within the structure of the Company's list of Wilmington customers.

On 30 September 1988, Employee and his wife left the employment of the Company and on 1 October 1988 began work with defendant Wilmington Auto Rental, Inc., a corporation owned by Joseph G. Priest and Marilynne McMahon. Wilmington Auto Rental, Inc. owned the Thrifty Car Rental franchise and was in the business of leasing vehicles to the public. After 1 October 1988, defendant Wilmington Auto Rental, Inc., leased several vehicles to former customers of the Company.

The Company's complaint alleges that Employee, his wife, and defendant Priest, in conspiracy with each other, embarked on an unlawful plan and scheme "to divert [the Company's] business to themselves" and "unlawfully [used the Company's] competitively sensitive proprietary information and [breached] the fiduciary duties owed by Defendants to [the Company] and [breached] Defendant Robert F. McMahon's employment agreement." On 11 October 1988, the trial court entered a temporary restraining order which was

converted into a preliminary injunction after a hearing on 7 November 1988. In its 7 November 1988 order the trial judge entered the following pertinent findings of fact, conclusions and order:

FINDINGS OF FACT

14. The covenant not to compete was entered into in order to protect the business interests of the Plaintiff.

15. The territorial restriction of the State of North Carolina contained in the covenant not to compete is necessary to protect the business and good will of the Plaintiff.

16. The time limitation of two years contained in the covenant not to compete is reasonably designed to protect the legitimate business interests of the Plaintiff.

. . . .

19. Defendants Robert and Marilynne McMahon, as employees of Plaintiff, had access to competitively sensitive, proprietary information of Plaintiff including Plaintiff's pricing list, customer list, customer contacts, marketing information, inventory information, and information concerning the rental car needs of Plaintiff's customers.

. . . .

29. The Defendants McMahon and McMahon have intentionally and willfully solicited or attempted to procure the customers and accounts of Plaintiff.

CONCLUSIONS OF LAW

36. The covenant not to compete protected the legitimate business interests of the Plaintiff, its customer list, pricing list, marketing information, inventory information, and information concerning the rental car needs of Plaintiff's customers.

37. The territorial restriction of the State of North Carolina contained in the covenant not to compete is necessary to protect the business and good will of the Plaintiff.

38. The time limitation of two years contained in the covenant not to compete is reasonably designed to protect the legitimate business interests of the Plaintiff.

. . . .

TRIANGLE LEASING CO. v. McMAHON

[96 N.C. App. 140 (1989)]

43. Plaintiff has shown a reasonable likelihood that it will prevail on the merits at trial on its claims against Defendants McMahon and McMahon for violating the employment agreement and, through a civil conspiracy among and between the Defendants, Robert and Marilynne McMahon, to violate the employment agreement. . . .

44. Plaintiff has shown that a preliminary injunction against Defendants Robert and Marilynne McMahon is reasonably necessary for the protection of its rights during the course of litigation because Plaintiff's covenant not to compete will expire on September 30, 1990, and it does not appear that Plaintiff has an adequate remedy at law.

. . . .

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendants Robert and Marilynne McMahon, their officers, agents, servants and employees and other people in active concert or participation with the Defendants Robert and Marilynne McMahon be and hereby are enjoined and restrained by order of this court from committing or continuing to commit any of the following acts:

1. The retention, use, or disclosure of any records, customer lists, or price lists of Plaintiff or copies thereof.

2. Directly or indirectly soliciting or attempting to procure the customers, accounts, or business of Plaintiff within the State . . . for a period of two years from September 30, 1988. . . .

4. Becoming employed with, consulting with, or participating in the management of the Defendant Wilmington Auto Rental, Inc. and further from being employed by or consulting with the Defendant Joseph G. Priest in the automobile, van and truck rental and sales business in North Carolina for a period of two years from September 30, 1988.

IT IS FURTHER ORDERED that the secured bond of $5,000.00 previously posted by the plaintiff shall remain in effect throughout the duration of this preliminary injunction.

---

The issue presented in this case is: whether the Company can bar Employee from competing with the Company's business throughout North Carolina for two years, when Employee's con-

fidential information and customer contacts derive from only one city in the state. The answer to this issue resolves the ultimate issue of whether the trial court properly granted a preliminary injunction against Employee.

[1] No appeal lies from a trial court's grant of an interlocutory preliminary injunction unless the defendant would be deprived of a substantial right which he would lose absent a review prior to final determination. *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983). We determine that defendants would lose a substantial right, that of practicing their livelihood within North Carolina, prior to final determination of the contract on its merits. As of the time of this opinion, defendants have been prevented from practicing their livelihood anywhere in North Carolina for a period of approximately one year, although they opened a business to do so shortly before the Company filed this suit. *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 696, *petition denied*, 312 N.C. 495, 322 S.E.2d 558 (1984).

[2] A preliminary injunction is an equitable remedy, and will issue only if the movant is able to show at the hearing the " *'likelihood* of success on the merits of his case.' " *A.E.P.*, at 401, 302 S.E.2d at 759 (emphasis in original) (citations omitted). This 'likelihood of success' results from the movant's prima facie showing of pre-requisites to the enforceability of a covenant: its reasonableness as to both time and territory. *A.E.P.*, at 402-03, 302 S.E.2d at 761. It is only after the movant establishes its likelihood of success that the trial court considers whether plaintiff is likely to suffer irreparable harm, or needs the injunction to protect its rights prior to trial on the merits. *Robins & Weill*, 70 N.C. App. at 540-41, 320 S.E.2d at 696. The trial court exercises its sound discretion in deciding whether to grant the relief requested. *Huskins v. Yancey Hospital, Inc.*, 238 N.C. 357, 360, 78 S.E.2d 116, 120 (1953).

Our de novo review of the trial court's grant of the preliminary injunction is based on the "facts and circumstances of each particular case." *Clyde Rudd & Associates, Inc. v. Taylor*, 29 N.C. App. 679, 684, 225 S.E.2d 602, 605, *disc. rev. denied*, 290 N.C. 659, 228 S.E.2d 451 (1976). We determine from the testimony presented at the hearing of this matter that the covenant is unenforceable because its territory is unnecessarily broad to protect the company.

## TRIANGLE LEASING CO. v. McMAHON
[96 N.C. App. 140 (1989)]

" '[T]he territory [the covenant] embraces . . . shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.' " *A.E.P.*, 308 N.C. at 408, 302 S.E.2d at 763 (citation omitted). The reasonableness of the restraint is a matter for the court and the contract "must stand or fall integrally." *Noe v. McDevitt*, 228 N.C. 242, 245, 45 S.E.2d 121, 123 (1947). If the territory is broader than is reasonably necessary to protect the employer's business, the contract is invalid. *Delmar Studios v. Kinsey*, 233 S.C. 313, 324, 104 S.E.2d 338, 344 (1958) (applying North Carolina law).

This is not a case in which the parties have made divisions of territory, so that a court of equity can take notice of the divisions the parties have made, enforcing only the reasonable territorial restrictions. *Welcome Wagon, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961) (holding that a provision for a city-wide restriction was reasonable, but that a provision restricting any city or town in the United States where employer does or intends to do business was not).

The pertinent provisions of the contract at issue are Parts 4 and 5: "Accounts of the Company" and "Covenant Not to Compete; Disclosure of Information," respectively. Clearly, the Company's intent in these provisions was to prevent Employee from taking unfair advantage of his contacts with Company customers and confidential business information *'acquired during employment.'* The record shows that during his employment, Employee's access was limited to *Wilmington* customers and business confidences, and that the Wilmington office started operations with Employee as its first employee.

In reviewing the 'necessity' of protection for an employer's business in a wide territory, we take particular notice of the employee's "personal association with customers" because of his status as manager for his employer, and the employee's acquisition of "intimate knowledge" about the employer's business. *Manpower of Guilford Co., Inc. v. Hedgecock and Tempco, Inc.*, 42 N.C. App. 515, 521, 257 S.E.2d 109, 114 (1979). The former activities are known commonly as "customer contact," and the latter as "confidential information." *See United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 651, 657, 370 S.E.2d 375, 381, 384 (1988). However, when such contact and information derives from employee's employment which is limited to a portion of employer's total business area, the em-

ployer must "correlate the protection sought [over the total business area] with [a] need of his business." *Noe*, 228 N.C. at 245, 45 S.E.2d at 123. "Furthermore, in determining the reasonableness of territorial restrictions, when the primary concern is the employee's knowledge of customers, the territory should only be limited to the areas in which the employee made contacts during the period of his employment." *Manpower*, 42 N.C. App. at 522, 257 S.E.2d at 114-15. "A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in *maintaining* [its] customers." *Id.*, at 523, 247 S.E.2d at 115 (emphasis added).

When we review the evidence presented at the hearing, the burden of persuasion rests on the employer to show necessity for protection which would extend outside the area in which the employee worked. *Delmar*, 233 S.C. at 319, 104 S.E.2d at 341. Facts which would be persuasive on this point would include the Company's showing the Employee "became acquainted with those [customers] in other parts of the territory mentioned in the contract or that it was contemplated that he would later work therein." *Id.*, at 320, 104 S.E.2d at 341. Or, the employer could show that it furnished its employee with confidential business information on customers outside the area in which he worked, such as the names of customers, and the "history of the solicitation" of other customers. *Id.*

From the information which Company introduced at the preliminary injunction hearing, we find no indication that Employee had customer lists from Company locations other than the Wilmington location. The Company introduced evidence that its Wilmington customer base included "categories" of "regular customers in Wilmington," such as rental cars and body shops, "bread and butter" customers such as a film company, and "the general public calling up for rental cars." However, all of the Company's evidence introduced at the hearing focused on its regular customers and 'bread and butter' customers in the Wilmington area.

As to confidential information of business outside Wilmington, the record shows only that the Company gave Employee "price information at the then Western Boulevard [Raleigh] location" approximately two years prior to Employee's resignation while Employee was in training. However, the Company does not show whether the price information was for Wilmington or Raleigh.

**TRIANGLE LEASING CO. v. McMAHON**

[96 N.C. App. 140 (1989)]

The Company also admitted that it priced its products "to the individual customer, consumer," and "the prices will fluctuate [according to] what the market is presently [sic] doing." All of Company evidence highlighting Employee's acquisition of confidential information related to Employee's intimate knowledge of the *Wilmington* market, and how Company conducted business in the *Wilmington* market. The Company has shown no facts to support its contention the Employee's attempts to compete affected the Company's business in its two other locations or in the whole of North Carolina, outside the Wilmington area. *Cf. Schultz and Assoc. v. Ingram*, 38 N.C. App. 422, 429, 248 S.E.2d 345, 350 (1978) (Employer showed facts supporting its contention that Employee competed with it in Employer's entire area of business).

The Company seeks to bar Employee from competing with it for its customers anywhere in North Carolina, despite the Company's failure to show Employee's knowledge of Company's current customers and accounts outside Wilmington, or Employee's knowledge of the Company's records of customer buying habits, pricing formula, vehicle inventory, or market factors outside Wilmington, for the period of two years.

[3] Without determining what period of time would be acceptable, we determine that the covenant's time restriction of two years is also unenforceable in light of the extensive territorial restraint.

> Although a valid covenant not to compete must be reasonable as to both time and area, these two requirements are not independent and unrelated aspects of the restraint. Each must be considered in determining the reasonableness of the other. Furthermore, neither is conclusive of the validity of the covenant, but both are important factors in settling that question. . . . In situations such as the one we now consider, a longer period of time is justified where the area in which competition is prohibited is relatively small.

*Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 665, 158 S.E.2d 840, 844 (1968) (citation omitted).

In sum, the practical effect of the territorial provision is to stifle normal competition for vehicle rentals and leasing throughout the State of North Carolina. A contract whose provision has such an effect "is as much offensive to public policy as it ever was in promoting monopoly at the public expense and is bad." *Kadis*

*v. Britt*, 224 N.C. 154, 159, 29 S.E.2d 543, 546 (1944). The Company has failed to carry its burden of showing a likelihood of success on the merits as to the reasonable necessity of its territorial restriction.

Reversed.

Judge JOHNSON concurs.

Judge COZORT dissents.

Judge JOHNSON concurring.

I concur with the reasoning and holding of the opinion that the covenant is unenforceable as to territory and that the order of the trial court should be reversed. However, inasmuch as the covenant is unenforceable because the territory the covenant embraces is greater than is reasonably necessary to secure the protection of the business or good will of the plaintiff, I find it unnecessary to pass upon the question of whether the covenant's time restriction of two years is also unenforceable.

Judge COZORT dissenting.

I disagree with the majority's conclusion that the employment agreement executed by defendant Robert F. McMahon is unreasonable in respect to time and territory. In my opinion, the trial court did not err in entering the preliminary injunction, and I vote to affirm.

In *Clyde Rudd & Associates, Inc. v. Taylor*, 29 N.C. App. 679, 225 S.E.2d 602 (1976), this Court considered the reasonableness of a restrictive covenant in an employment contract of a sales representative. The representative was assigned a 10-county territory in North Carolina. His employment contract provided he would not compete with his employer in North Carolina, South Carolina, and parts of Virginia and Tennessee for a period of two years. This Court held those facts were insufficient to permit a determination that the covenant was unreasonable as to territory. *Id.* at 684, 225 S.E.2d at 605. I find that reasoning applicable to the facts below, where the defendant was employed to develop the plaintiff's business in the Wilmington area (although the executed contract did *not* restrict defendant's working area to Wilmington) and the non-competition clause applied to North Carolina.

I also find nothing unreasonable about the two-year time restriction. My review of the applicable case law indicates that two-year restrictions are generally found reasonable. *See, e.g., Keith v. Day,* 81 N.C. App. 185, 343 S.E.2d 562 (1986). Further, I find nothing in the record to support the majority's conclusion that the practical effect of the restriction is to stifle competition. To the contrary, defendant testified to at least six other auto leasing companies in Wilmington, including Hertz, Avis, National, Budget, Snappy, and Claudia's, with the last two presumably local operations as opposed to national chains.

I vote to affirm the trial court.