LUMBER CO. v. COREY.

(Filed March 6, 1906).

*Contracts—Standing Timber—Statute of Frauds—Vendor and Vendee—Bilateral Contracts—Options.*

1. A contract to cut all timber of an indicated measurement on certain land, for a fixed period, passes a present estate in the timber defeasible as to all timber not cut within the limit of the time fixed.

2. The fact that the plaintiff did not sign the contract so as to become in law bound for the payment of the purchase money does not prevent the contract from being a bilateral one, instead of a mere option.

3. To make a contract to sell growing trees binding on the vendor, it is sufficient that the contract be signed by him, and it is not necessary that it should be signed by the vendee.

4. The words of a contract, "all the pine timber that will measure twelve inches at the stump, eighteen inches above the ground, when cut," mean all timber standing on the land which are found to be not less in diameter than 12 inches by measurement to be made 18 inches from the ground, at the time the trees are reached in the process of cutting.

ACTION by Dennis Simmons Lumber Co. against Joseph Corey and wife, heard by *Judge C. M. Cooke* and a jury, at the December Term, 1905, of the Superior Court of MARTIN.

The facts, which in nearly all respects are substantially those stated in the brief of the defendants' counsel where they are well summarized, are as follows: On the 8th of November, 1899, the plaintiff and defendants entered into the following written agreement: "Received this 8th day of November, 1899, of The Dennis Simmons Lumber Co., $90 in part payment for all the pine timber that will measure 12 inches at the stump, 18 inches above the ground when cut, that is or may be on the following land, viz. (here follows the de-

scription of the tract of land on which the timber stood, said to contain 150 acres, more or less) : "Which we have sold them for $2,000; $410 to be paid in cash within ten days from this date, the balance ($1,500) to be paid within five years from this date, together with the right and privilege of entering upon the said land and the building of tram-roads only, and the use of undergrowth for building same over said land only, for the period of ten years from this date. When The Dennis Simmons Lumber Co. shall have paid the entire amount of the purchase money we bind ourselves and our heirs to execute to them or their assigns a lease for said timber for the term of ten years and the privileges before named."

The plaintiff paid $410 within ten days after the date of the contract, making with the amount ($90) formerly paid, the sum of $500 paid in all, and leaving a balance of $1,500 to be paid within the five years. Within the said time the plaintiff tendered to the defendants the said balance ($1,500), but accompanied the tender of the money with a demand that defendants execute to the plaintiff a conveyance of the timber, which the plaintiff had caused to be prepared and then offered to the defendants for execution, and which agreed in its terms with the contract, except that it described the timber conveyed or leased as measuring "12 inches or more" at the stump, 18 inches above the ground, when cut, whereas in the contract only the words "12 inches" are used, the words "or more" having been inserted in consequence of information received by the plaintiff that the defendants had insisted that it could not cut under the contract any timber measuring more than 12 inches. The defendants refused to receive the money and execute the conveyance, because it was not drawn according to the exact terms of the agreement. Some time thereafter and within the five years, the defendants prepared and executed a deed in accordance with the terms of the contract, that is, by describing the measurement of the trees sold as "12 inches at the stump, 18 inches above the ground when

cut." This deed was tendered to the plaintiff and the payment of the balance of the purchase money demanded. Plaintiff refused to execute the deed, or to pay the balance of the purchase money unless the defendants would execute the deed it had tendered, as the defendants still insisted that plaintiff had no right under the contract to cut timber measuring more than 12 inches. About four months after the expiration of the five years, the plaintiff brought this suit to compel the defendants to specifically perform the contract. It also alleged in its complaint that the oral agreement between the parties was that it should have the right to cut all trees measuring 12 inches or more at the stump, and prayed that, if the contract did not so express the agreement, it be reformed. Pending this action, the plaintiff notified the defendants that it would cut the timber measuring 12 inches or more. Defendants then commenced an action to enjoin the alleged trespass and obtained a restraining order. The two actions, by consent of the parties and the order of the court, were consolidated and heard as one upon the pleadings, admissions and exhibits, from which the foregoing facts are taken. The court adjudged that the plaintiff, The Dennis Simmons Lumber Company, acquired an interest in the lands described in the pleadings, under the contract of November 8, 1899, to the extent of all the pine timber that will measure 12 inches at the stump, 18 inches from the ground, when cut, together with the other rights and privileges mentioned in the same, for a period of ten years from the said date, and that said plaintiff is entitled to have a deed therefor, and the defendants were thereupon ordered to execute such a deed and, in default of their doing so, that the decree or judgment of the court should have the effect of conveying and transferring the said title and rights as though the conveyance had been duly executed in accordance with the provisions of the statute. The court then, in its judgment, dissolved the restraining order and refused to grant an injunction, and it further

adjudged that the plaintiff, the lumber company, was entitled, under the contract and the deed ordered to be made in pursuance thereof, to cut all timber on the said land measuring 12 inches or more in diameter at the stump, 18 inches from the ground when cut during the said period of ten years. Defendants Joseph Corey and wife excepted and appealed.

*Stubbs, Gilliam & Martin* for the plaintiff.

*Ward & Grimes, S. A. Newell* and *F. D. Winston* for the defendants.

WALKER, J., after stating the case: The real, and indeed the vital question in this case is to be found in the ruling of the court that by the contract between the parties, the plaintiff acquired such an estate in the land as entitled it to cut all the pine timber measuring 12 inches and upwards in diameter at the stump, 18 inches above the ground when cut, and in furtherance thereof to enjoy the rights and privileges given by the contract, such as entering upon the land, building tram-ways and using the under growth for the purpose of construction, provided the right to cut and the other rights and privileges shall not last beyond ten years from the date of the contract. There was another question raised by the defendants, namely, that the instrument of November 8, 1899, contained only an option to buy and that the plaintiff had lost all right thereunder to call for the title or to cut the timber and exercise the rights and privileges mentioned therein, by not paying the balance of the purchase money within five years from the date thereof. These propositions we will consider, though not in the order stated.

This court has so recently and so fully considered the question as to the true construction of contracts substantially like the one now under review, that it would seem almost useless for us to add anything to what has already been said. We have decided that such a contract, which should be treated as,

in effect, a conveyance, passes a present estate in the timber defeasible as to all timber not cut within the limit of time fixed by the parties in their agreement. That this is the true construction, as settled by the best considered cases, was clearly indicated in *Bunch v. Lumber Co.*, 134 N. C., 116, though it was not thought necessary in that case to finally and conclusively adopt it, or to determine what is the exact nature of such contracts, as we were able to dispose of the case upon other grounds without deciding that matter. After reviewing some of the authorities in the other States, which were arrayed on opposite sides of the question, and stating the two conflicting views held by the different courts, we distinctly intimated which of the two we thought was more in accordance with the intention of the parties and better supported by the rules of interpretation, by the use of the following language; "While some of the cases in this and other States liken a contract of the kind we are construing to a lease, it may be true that it should not be technically so construed, but that it should be regarded as a conveyance of the timber, or an interest or estate in the timber, upon condition that if it is not cut and removed within a given time, the interest or estate so conveyed shall revest in or revert to the grantor. While we are inclined to adopt this as the better interpretation, and the one more perhaps in consonance with the intention of the parties as disclosed by the language employed by them, yet we think that, however the contract may be considered with reference to the interest or estate of the defendant's assignor, the result in this case must be the same." 134 N. C., at p. 118. And in another part of the opinion it was said: "At the expiration of the time the estate in so much of the timber as had (not) been cut and removed would revert to the vendor, or at least the timber would become his absolute property." 134 N. C., at p. 120, (the word "not" in the passage quoted from the opinion was inadvertently omitted by the printer). We were inclined to take this view

of the matter because of what we considered to be the strong trend of our former decisions; *Moring v. Ward,* 50 N. C., 272; *Dunkart v. Rineheart,* 89 N. C., 354; *Carpenter v. Medford,* 99 N. C., 495. In *Dunkart v. Rineheart,* the contract for the sale of "walnut trees" was executory in form, the defendant merely agreeing to sell them. Referring to this feature of the instrument, the court said: "We are disposed to think that the property in the trees passed under the contract, and that the intent and understanding of the parties that it should so operate appear upon its face." 89 N. C., at p. 358. With much greater reason can it be said that, in our case, the contract passes the property in the "pine timber," as in it the defendants acknowledged the receipt of a part of the purchase money "for all the pine timber" of the indicated measurement and, after describing where it is situated, they refer to the timber as being that "which we have sold to them (the plaintiff) for $2,000," and then appoint the time for the payment of the other instalments. The contract in *Carpenter v. Medford,* in the form of a receipt, was substantially identical with the one given by the defendants to the plaintiff and it was construed as having the legal effect to pass the property in the trees, the same as if it had been in the form of a deed. It is not necessary to prolong the discussion, as the very question is fully considered in the recent case of *Hawkins v. Lumber Co.,* 139 N. C., 160, and the conclusion therein reached was that an estate in the timber passed by the contract.

The fact that the plaintiff did not sign the contract so as to become in law bound for the payment of the purchase money, does not prevent the contract from being a bilateral one instead of a mere option. The defendants' counsel contended that it was unilateral, as the plaintiffs are not bound because they did not sign the contract and are therefore protected by the statute of frauds. He argued from this proposition that time was of the essence of the contract, and that as the plaintiff had not tendered the money within five years

it could not now ask the court to enforce the performance of the contract by the defendants against their consent.   There are two answers to this contention, either of which is fatal to it.   The plaintiff is seeking to enforce the contract and agrees to pay the balance of the money, thereby waiving the benefit of the statute of frauds.   The defendants are the persons sought to be charged and they are the only ones required to sign the memorandum in order to meet the requirement of the statute.   It is the party sought "to be charged" who must have signed.   *Hall v. Misenheimer,* 137 N. C., 183.   The matter is so clearly discussed and aptly illustrated by *Pearson, J.,* for the court in *Mizell v. Burnett,* 49 N. C., 249, which involved a contract for the sale of trees, that we will content ourselves with reproducing here the material portion of the opinion in that case relating to the question: "We are of the opinion with His Honor, that to make a contract to sell growing trees binding on the vendor, it is sufficient that the contract be signed by him, and it is not necessary that it should be signed by the vendee.   The statute provides that the contract shall be signed by the 'party to be charged therewith.'   This answers the purpose, which is to exclude perjury in an action to enforce the contract.   In reference to the other party the statute is silent, and there is consequently nothing to justify the construction, that he is also required to sign. If the vendor binds himself in writing, and is content to take the verbal promise of the purchaser to pay the price, it is his own fault, and he must blame himself for the folly of getting into a situation where he is bound, but the other party cannot be charged if he chooses to insist upon the statute. Common justice, and the general principles of law, require that there shall be a mutuality in contracts; that is, if one party is bound, the other ought to be.   But there may be exceptions.   Although it is a maxim that a contract is never binding unless there be a consideration, yet, there is a distinction between a consideration and the mutuality of contracts in

reference to the obligation thereof, and the fact that by some other principle of law or the provisions of a statute, one party has it in his power to avoid the obligation, although it suggests a very forcible reason for not entering into a one-sided contract, does not necessarily have the effect of making such a contract void as to both parties. One agrees to deliver, at a future day, a certain article to an infant, in consideration of his promise to pay the price, the contract is not void, although the infant may avoid the obligation on his part, if he chooses to protect himself on the ground of infancy. So, if one agrees in writing to convey land in consideration of a verbal promise of the other party to pay the price, the contract is binding on the vendor, although the vendee may avoid the obligation on his part if he chooses to protect himself under the provisions of the statute. It is not considered in either case that the contract is *nudum pactum* and void for the want of consideration. This is the result of the English decisions in reference to the statute of frauds, and although our statute is not precisely in the same words, yet the substance is the same, the purpose is the same and the difference in the wording is not such as to justify a difference in the construction," citing *Laythoarp v. Bryant,* 29 E. C. L., 469; *Allen v. Bennett,* 3 Taunt., 170. That decision seems to cover entirely the point now being considered. To the same effect is *Green v. Railroad,* 77 N. C., 96. The recital in the contract that there had been a sale, implies or presupposes a promise of the plaintiff to pay the price which is itself the consideration of the defendant's agreement to sell and convey, though strict mutuality may be lacking, as by reason of the statute of frauds, plaintiff's promise cannot be enforced. His present willingness to perform removes this objection. Besides, the very statement in the contract, that they had sold the timber and, in the deed they tendered to the plaintiff, that they had "bargained and sold" it, fully meets and refutes any suggestion that it was intended merely as an option, so as to require a strict performance by

the plaintiff within the time limited. The other answer to defendant's contention is that the plaintiff tendered performance within the time limited, and this incidentally involves the other question raised in the case, and the decision of His Honor thereon, as to what timber was acquired by the plaintiff under the contract. If the deed which accompanied plaintiff's tender of the purchase money was drawn substantially in accordance with the terms of the contract in regard to the dimension of the trees to be cut, the other parts of it not being objectionable, the tender was of course a good one and the plaintiff has complied with his part of the contract even if it be treated as an option. We are of the opinion that while perhaps it would have been better if the plaintiff had tendered a deed expressed in the words of the contract, so far as the provision as to the size of the timber to be cut is concerned, and left the construction of those words to the courts in the event of any controversy with his vendor, yet we do not see how it has forfeited any right under the contract by putting a correct interpretation upon its language, nor do we understand why it should be prejudiced for thus attempting to provide against any possible litigation in the future.

Nothing remains now to be determined but the true meaning of the words of the contract, "all the pine timber that will measure twelve inches at the stump, eighteen inches above the ground, when cut." There can be no well founded doubt, we think, that the vendor intended by the contract to sell, and the vendee to buy, all timber standing on the land which was found to be not less in diameter than 12 inches by measurement to be made 18 inches from the ground, at the time the trees are reached in the process of cutting. If the contract is read in the manner we have suggested, its effect of course will be to pass to the plaintiff the property in timber which is of the dimension stated in its demand upon the defendant, when it tendered payment of the money and also the deed for execution, the terms we have used being but the converse of those

we find in the deed and having of course the same meaning. This must be the true construction of the contract as we cannot for a moment suppose that the plaintiff, under the circumstances, would enter into a contract to cut trees exactly 12 inches in diameter for $2,000, payable within five years with the privilege of ten years to cut them. Such a contract, to say the least of it, would be anomalous, and we agree with His Honor that the defendant was not authorized to put such a construction upon it. The parties surely did not contemplate that so uncertain an interest in the trees should pass. The plaintiff could not well know that there were any trees of that exact dimension in this forest and if any, how many were there, or that any would attain that growth within the period named, nor can it be imagined for what purpose trees of that particular size would be needed, or why the time for cutting them was extended throughout so long a period. The evident purpose was to preserve the small standing trees until they had grown to sufficient size to be valuable as timber and to prevent the forest from being unnecessarily denuded. These and other considerations lead us to reject the defendant's construction of the contract as contrary to the real meaning of the parties.

We have been able to find but one case in which the contract was worded like this one, and in that case it was tacitly conceded that the indicated dimension at the stump was intended as the minimum, as no exception was taken to the ruling of the court in that respect, but the case was strenuously contested on the point as to whether the measurement should include the bark of the tree. *Alcutt v. Lakin,* 33 N. H., 507. It was taken for granted that the other ruling was correct.

It follows from what we have said, that the contract transferred an estate to the lumber company, that it was bilateral, the plaintiff's promise to pay the purchase money, whether express or implied, being a sufficient consideration to sup-

port it, even though there may not have been a strict mutuality, because the plaintiff did not sign it—and lastly, that if it was unilateral or merely an option, the plaintiff made a sufficient tender within the time fixed for its election.

We conclude that the case has been fairly tried upon its merits and that there was no error committed by the court.

No Error.