MANPOWER OF GUILFORD COUNTY, INC. v. CLAUDE H. HEDGECOCK AND
TEMPCO, INC.

No. 7818SC858

(Filed 7 August 1979)

1. **Master and Servant § 11.1— covenant not to compete—employer's signature not required**

   A covenant not to ·compete in a contract signed by defendant was valid since G.S. 75-4 establishes that contracts or agreements limiting the rights of persons to do business in this State may be enforceable if put in writing "duly signed by the party who agrees not to enter into any such business within such territory," and it is not necessary that the persons seeking enforcement of the terms required to be in writing also sign the writing.

2. **Master and Servant § 11.1— covenant not to compete—territorial restriction unreasonable**

   An agreement by defendant employee not to compete with plaintiff employer for a one year period after termination of employment within a twenty-five mile radius of any city where there was a Manpower office was reasonable as to the time limitation but was not reasonable with respect to the territorial restriction, since defendant's employer, Manpower of Guilford County, Inc., had offices only in Greensboro, High Point, and Winston-Salem, and therefore had no legitimate interest in preventing defendant from competing with other Manpower franchises in other cities or states.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 3 May 1978 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 May 1979.

This is an action by Manpower of Guilford County, Inc., either as direct beneficiary or third party beneficiary, for breach of a covenant not to compete ancillary to an employment contract. Plaintiff seeks to enjoin, preliminarily and permanently, defendant, Claude H. Hedgecock, from engaging directly or indirectly in competition with plaintiff within a 25-mile radius . of plaintiff's Greensboro and High Point offices for a period of one year immediately following 19 August 1977. Plaintiff also seeks an injunction to prevent defendant, Tempco, Inc., from employing

Hedgecock and from soliciting or accepting business from any of plaintiff's customers. Plaintiff finally seeks an accounting of the earnings and profits accruing to defendants as a consequence of their alleged wrongful and unlawful conduct.

Defendant Hedgecock answered the complaint and petition for temporary injunction averring three grounds in defense of the action. First, he avers that the employment contract was not enforceable by this plaintiff because it was captioned and signed "Manpower, Inc." which is a Charlotte-based corporation separate and distinct from this plaintiff. Second, defendant avers that the provisions of the contract limiting competition with plaintiff are "illegal and void, and contrary to public policy". Finally, defendant avers that during his employment by plaintiff, he was not privy to confidential information which was not otherwise generally available to the public at large. The corporate defendant which employs Hedgecock responded that it had no legal obligation to this plaintiff and that the motion is in direct harassment of defendant with no reasonable grounds therefor and constitutes an unfair trade practice and method of competition. In response to plaintiff's alternative assertion that it was the third party beneficiary of the contract between Manpower, Inc. and Hedgecock, both defendants aver that the covenant was void as a general restraint on trade, that there was no conspiracy between defendants to violate the covenants, and that the third party beneficiary doctrine is inapplicable in the absence of a valid and enforceable contract between Manpower, Inc. and Hedgecock.

Defendant, Tempco, Inc., filed a motion for summary judgment on 21 March 1978, which was denied 19 April 1978. A subsequent motion for summary judgment was filed by Tempco, Inc., 21 April 1978. Defendant Hedgecock filed a similar motion that same day. A hearing on the pending motions for a preliminary injunction and summary judgment was held at the 24 April 1978 civil session of Superior Court in Guilford County.

The evidence presented at the hearing for the preliminary injunction tended to show that Hedgecock was hired by plaintiff, first as a part-time employee, in January of 1967. He worked as an "industrial dispatcher". On 8 January 1968, Hedgecock went to work for plaintiff as the full-time manager of plaintiff's High Point office. On that date Hedgecock signed a printed contract

form which plaintiff characterizes as its standard employment agreement. The document was entitled "Employment Agreement" and was captioned, in handwritten form, *Claude H. Hedgecock*, Employee, *Manpower, Inc.*, Company. Paragraph 10 of the printed contract form provided as follows:

"10. You acknowledge and recognize that the lists of customers of the company are a valuable, special and unique asset of the company's business, and were acquired at considerable expense to the company; and that said lists are confidential and are a valuable trade and business secret belonging to the company. Therefore, you agree that you will not at any time during your employment with the company or within one (1) year after leaving its service, for yourself or any other person or company, divulge the names or addresses of any information concerning any customer of the company. You further agree during said period not to disclose any information obtained while in the employ of the company, without the consent of the company, said restriction to include the company's method of conducting business."

The agreement was signed "Claude H. Hedgecock" in the blank provided for the employee's signature and was signed "Manpower, Inc." in the blank provided for the company's signature. Both signatures were witnessed by W. L. Trull. Beneath these signatures on the page is a printed paragraph which reads:

"Employee recognizes and acknowledges that through his association with Manpower, Inc. and/or its affiliates and/or licensees he will have access to Manpower's valuable and highly confidential information, including, for example, specialized business techniques, advertising materials and campaigns, national account lists, and procedural manuals. Employee further recognizes and acknowledges that such confidential information will be made available to him only if he agrees not to utilize it in competition with other Manpower offices. Therefore employee specifically agrees, during the continuation of employment under this agreement and for a one (1) year period after termination thereof, (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein),

whether directly or indirectly, on his own account or as agent, stockholder, owner, employer, employee or otherwise, not to engage in a business similar or competitive to that of Manpower, Inc. and/or its affiliates and/or licensees, within a 25 mile radius of any city where there is a Manpower office or Manpower licensed business, and further agrees that if employee violates this agreement, Manpower, Inc., and/or its local affiliate and/or local licensee in the city where such violation occurs, shall be entitled, in addition to other legal or equitable damages or remedies available, to an injunction restraining such violation."

Following this paragraph appears the signature of Claude H. Hedgecock. This signature again was witnessed by W. L. Trull.

Hedgecock worked under this agreement with plaintiff for ten years as a full-time employee and manager of the High Point office. Hedgecock submitted his letter of resignation in July of 1977. Hedgecock's letter stated that he intended to go to work for his son as an associate in the real estate business. Hedgecock denied that he was going to compete with plaintiff in the temporary help business. Nevertheless, according to W. L. Trull, President of Manpower of Guilford County, Inc., Tempco, Inc., the company by whom Hedgecock was employed, has taken several of his major clients who used his temporary employment services including Jiffy Manufacturing Company, The Thomas Company, and Stroupe Mirror Company. Trull also testified that three to five former Manpower employees now work for Tempco, Inc.

At the hearing, Trull was questioned by the court concerning the signatures on the agreement. The court concluded that the agreement was not properly signed by Trull in his capacity as officer of the company and that his signature only appeared in his capacity as a witness. The trial court concluded that the contract was not enforceable in the absence of a signature by an officer of the corporation in his corporate capacity. The motion for a preliminary injunction was denied orally. The trial court then ruled on the pending motions for summary judgment in favor of both defendants. Judgment was entered concluding that "the covenant sued upon herein was never properly signed or authorized by the Plaintiff Corporation." Plaintiff appeals.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Clinton Eudy, Jr., and Bruce H. Connors, for plaintiff appellant.*

*Stephen E. Lawing for defendant appellee.*

MORRIS, Chief Judge.

Plaintiff has assigned error to the denial of its motion for a preliminary injunction and to the entry of summary judgment in behalf of both defendants. It is clear from the record that the basis of the trial court's ruling was its conclusion that the corporate employer's signature on the agreement not to compete was insufficient, and that, therefore, plaintiff could not enforce the covenants against competition.

Plaintiff asserts that the issue of the signature is the only question for review because of the trial court's opinion, expressed at the hearing, that the agreement was otherwise valid and enforceable. Plaintiff's argument on appeal is addressed primarily to the sufficiency of the signatures. Although we agree with plaintiff, as pointed out below, that the employment contract and its ancillary covenants against competition are not infirm because of the requisite signatures, the sufficiency of the signatures is not the only question before us. We must consider each challenge to the enforceability of the agreement. A correct ruling by a trial court will not be set aside merely because the court gives a wrong or insufficient reason for its ruling. *See e.g., In re Will of Pendergrass*, 251 N.C. 737, 112 S.E. 2d 562 (1960); *Temple v. Temple*, 246 N.C. 334, 98 S.E. 2d 314 (1957); *Reese v. Carson*, 3 N.C. App. 99, 164 S.E. 2d 99 (1968). The ruling must be upheld if it is correct upon any theory of law.

[1] Plaintiff is correct in its contention that plaintiff's signature is not necessary to render enforceable the covenant not to compete. The sufficiency of the writing is controlled by G.S. 75-4. Its language is clear and unambiguous. Subject to the general restrictions as to reasonableness of ancillary restraints on competition, G.S. 75-4 establishes that contracts or agreements limiting the rights of persons to do business in this State may be enforeceable if put in writing "duly signed by the party who agrees not to enter into any such business within such territory". G.S. 75-4 is consistent with the other "statute of frauds" provisions in our law which require only that the writing be "signed by the party

charged therewith", G.S. 22-1 (29 Charles II (1676), ch. 3, sec. 4), or require that the writing be signed by "the party against whom enforcement is sought", G.S. 25-2-201(1) (Uniform Commercial Code). Our holding is consistent with the general view with respect to the necessary signatures to satisfy the Statute of Frauds. *See generally* 72 Am. Jur. 2d, Statute of Frauds § 364. It is not necessary that the person seeking enforcement of the terms required to be in writing also sign the writing. *Lumber Co. v. Corey*, 140 N.C. 462, 53 S.E. 300 (1906). The reasoning for this rule was stated in the early case of *Mizell v. Burnett*, 49 N.C. 249 (1857).

> "Common justice, and the general principles of law, require that there shall be a mutuality in contracts; that is, if one party is bound the other ought to be. But there may be exceptions. Although it is a maxim that a contract is never binding unless there be consideration, yet, there is a distinction between a consideration and the mutuality of contracts in reference to the obligation thereof, and the fact that by some other principle of law, or the provisions of a statute, one party has it in his power· to avoid the obligation, although it suggests a very forcible reason for not entering into a one-sided contract, does not necessarily have the effect of making such contract void as to both parties." *Id.* at 253.

Indeed, in this situation there is no concern over the absence of mutuality. Nor do we find validity to the argument that the employment contract is not a valid contract because not properly signed by a corporate officer. A contract of employment generally need not be in writing in North Carolina to be enforceable. Because of our conclusion that the covenant not to compete satisfies the requirements of G.S. 75-4, we now direct our inquiry to determine whether the covenants are otherwise valid and enforceable as against each defendant.

Defendants contend that the covenant not to compete is unenforceable by plaintiff for three reasons. First, they argue, the agreement sued upon is, on its face, between Hedgecock and Manpower, Inc., a legal entity separate from Manpower of Guilford County, Inc., and therefore is not enforceable by this plaintiff. However, the evidence at the hearing was uncontradicted that "Manpower, Inc." was used by plaintiff as being synonymous with

"Manpower of Guilford County, Inc." and also that "Manpower, Inc." was the name used by plaintiff under the terms of its licensing agreement. The trial court concluded, and we so hold, that for purposes of enforcing this contract Manpower, Inc. and Manpower of Guilford County, Inc. are one and the same. Hedgecock had been employed by plaintiff for some time prior to entering into the employment agreement and no doubt knew that his contract was with Manpower of Guilford County, Inc. Defendants' second argument challenging the validity of the covenant not to compete, which addresses the sufficiency of the signatures to the agreement, has, of course, been resolved against defendants. Finally, however, we must consider the validity of the time and territory restrictions on competition imposed by the agreement.

When the nature of employment such as in the instant case is such that the employee has personal contact with the patrons and customers of an employer, or where the employee acquires valuable information as to the nature and character of the business and the names of patrons or customers, thereby enabling him to take advantage of such knowledge and to compete unfairly with a former employer, equity may be interposed to prevent the breach of a covenant not to compete which is reasonable as to time and territory. *Greene Co. v. Arnold*, 266 N.C. 85, 145 S.E. 2d 304 (1965); *Exterminating Co. v. Griffin and Exterminating Co. v. Jones*, 258 N.C. 179, 128 S.E. 2d 139 (1962). The restrictions, however, must be no wider in scope than is necessary to protect the business of the employer. *Comfort Spring Corp. v. Burroughs*, 217 N.C. 658, 9 S.E. 2d 473 (1940). *See generally Annot.*, 41 A.L.R. 2d 15 (1955); *Annot.*, 43 A.L.R. 2d 94 (1955).

A major consideration in determining the reasonableness of restrictions as to time and territory relates to the type of position occupied by the employee, and the skills and/or knowledge obtained by the employee while under employment. The individual defendant in this case occupied a managerial position which necessitated constant contact with customers of the plaintiff. Our courts have attached significance to the fact of an employee's managerial position. The employee's opportunity to acquire intimate knowledge of the business and to develop personal association with customers is an important consideration. *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154 (1930). *See also Sonotone Corp. v. Baldwin*, 227 N.C. 387, 42 S.E. 2d 352 (1947); *Exter-*

*minating Co. v. Wilson*, 227 N.C. 96, 40 S.E. 2d 696 (1946). One of the single most important assets of a business is its clientele, and protection of established customers is a valid interest of the employer. *See generally* 43 A.L.R. 2d at 162; 41 A.L.R. 2d at 71. Thus, a time limitation contained in a covenant not to compete should remain valid and enforceable if its duration can be justified on the ground that it is reasonably necessary to prevent a loss of customers to the employee or a subsequent employer. *See generally* 41 A.L.R. 2d at 71. Furthermore, in determining the reasonableness of territorial restrictions, when the primary concern is the employee's knowledge of customers, the territory should only be limited to areas in which the employee made contacts during the period of his employment. *See Associates, Inc. v. Taylor*, 29 N.C. App. 679, 225 S.E. 2d 602 (1976), *cert. denied*, 290 N.C. 659, 228 S.E. 2d 451 (1976).

[2] In our opinion, Hedgecock's agreement not to compete with plaintiff "for a one (1) year period after termination [of employment] (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants . . .)" is reasonable. Essentially, the restriction is for a period of one year unless Hedgecock is determined to have violated the covenant. In that case, construing the restriction strictly against its draftsman, as we must do with contracts of this nature, the practical result is that the restriction continues for a maximum of one year after a breach of the covenant ceases. The time required for litigation to enforce the covenants necessarily terminates upon enforcement of a decree prohibiting a continued violation of the covenant. The result is that plaintiff is entitled to one continuous year without competition from plaintiff. This is not unreasonable. Indeed, periods far exceeding one year have been recognized as reasonable in cases where the employee has had extensive customer contact. *See Machinery Co. v. Milholen*, 27 N.C. App. 678, 220 S.E. 2d 190 (1975); *Sales & Service v. Williams*, 22 N.C. App. 410, 206 S.E. 2d 745 (1974). *See also Greene Co. v. Arnold, supra* (4 years); *Welcome Wagon, Inc. v. Pender*, 255 N.C. 244, 120 S.E. 2d 739 (1961) (5 years); *Exterminating Co. v. Wilson, supra* (2 years); *Moskin Bros. v. Swartzberg, supra* (2 years).

Despite our conclusion that the covenant against competition is valid with respect to the time limitation, we are compelled to find that the restriction exceeds reasonable territorial limitations.

The covenant provided that Hedgecock was "not to engage in a business similar or competitive to that of Manpower, Inc. and/or its affiliates and/or licensees, within a 25 mile radius of *any city* where there is a Manpower office or Manpower licensed business." (Emphasis added.) A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers. This restriction potentially covers a 25-mile radius of any city in the country. Hedgecock's employer, Manpower of Guilford County, Inc., however, only has offices in Greensboro, High Point, and Winston-Salem. Manpower of Guilford County, Inc., has no legitimate interest in preventing Hedgecock from competing with other Manpower franchisees in other cities or states. Although Manpower, Inc., the franchisor, may have a legitimate right to prohibit its franchisees from competing with it or its affiliates throughout the country, *see generally Annot.*, 50 A.L.R. 2d 746 (1973), it is not a party to this lawsuit seeking to enforce the territorial restrictions. We express no opinion concerning whether the covenant restrictions concerning territory would be reasonable if the franchisor, Manpower, Inc., were seeking to enforce the covenant in its capacity as perhaps a third party beneficiary of the contract. We reserve our consideration of this question until it properly is brought before this Court. Thus, we conclude that the territorial restriction imposed by plaintiff was more extensive than necessary to secure his business or goodwill. *Compare Paper Co. v. McAllister*, 253 N.C. 529, 117 S.E. 2d 431 (1960); *Comfort Spring Corp. v. Burroughs, supra.* Although the restrictions might withstand scrutiny were they limited to the region in which plaintiff seeks to enjoin defendants (25 miles of Greensboro and High Point), this Court cannot in the absence of clearly severable territorial divisions, enforce the restrictions only insofar as they are reasonable. *Welcome Wagon, Inc. v. Pender, supra; Noe v. McDevitt*, 228 N.C. 242, 45 S.E. 2d 121 (1947).

In light of our conclusion that the trial court properly entered summary judgment for defendants thus resolving against plaintiff the action for a permanent injunction and damages, we find it unnecessary to consider the assignment of error directed to the denial of the plaintiff's motion for a temporary injunction.

Affirmed.

Judges HEDRICK and WEBB concur.