UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

GAME WORLD, INCORPORATED,
                *Plaintiff-Appellant,*

v.

OLHAUSEN BILLIARD MANUFACTURING,
INCORPORATED,
                *Defendant-Appellee.*

No. 02-1172

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-01-151-7-F)

Argued: September 25, 2002

Decided: October 28, 2002

Before WILKINS, WILLIAMS, and KING, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** John Richard Rittelmeyer, HARTZELL & WHITEMAN, L.L.P., Raleigh, North Carolina, for Appellant. Catharine Biggs Arrowood, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Brian D. Darer, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina; Charles A. Bird, Edward Patrick Swan, Jr., LUCE, FORWARD, HAMILTON & SCRIPPS, L.L.P., San Diego, California, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Game World, Incorporated (Game World) appeals a district court order dismissing its action against Olhausen Billiard Manufacturing, Incorporated (Olhausen), arguing that the district court erred in ruling that the action was barred by the statute of frauds. *See* N.C. Gen. Stat. § 75-4 (2001). We reverse and remand for further proceedings.

I.[1]

Game World is a North Carolina retailer of billiard tables and other gaming equipment. Olhausen is a California billiard table manufacturer. In 1985, the parties entered into an agreement designating Game World as the exclusive distributor of Olhausen products in the Carolinas. The agreement was memorialized in a letter ("the 1985 letter") from an Olhausen executive to Game World's president. The letter provided in part:

> As per our conversation this A.M., we at Olhausen . . . are giving you [the] states of North Carolina and South Carolina completely, for one year from this date, for exclusive representation of our pool tables. . . .
>
> If, after the one year, you have demonstrated a reasonable effort in selling our product, this agreement will, by all means continue.
>
> By reasonable effort, we feel that this agreement should be

---

[1] The following facts are derived from Game World's complaint and the documents in the record whose authenticity is not challenged. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (explaining that court may consider such documents in deciding a motion to dismiss).

> a two way street. We will not sell [to] any of your competitors in your states, and you will not carry and actively push competitive models of pool tables. . . .
>
> This agreement is in no way binding on you, but is meant to commit us.

J.A. 95. Thereafter, Game World made reasonable efforts to sell Olhausen's products, and thus, Game World's right to the exclusive distributorship continued through the time of the actions that are the basis of this suit.

In 1994, Olhausen sued Game World for amounts owed on an open account. The parties resolved the suit by way of a settlement agreement ("the Settlement Agreement"), which referred to their previous agreement:

> 1.4 Both GAME WORLD, INC. and [Olhausen] acknowledge that their manner of doing business in the past has been for [Olhausen] to treat GAME WORLD, INC. as its exclusive dealership in the state of North Carolina, and that so long as GAME WORLD, INC. meets its obligations under Paragraphs 1.2 and 1.3 above and abides by all terms of this AGREEMENT, that manner of doing business shall continue.

*Id.* at 62-63. The parties eventually renegotiated their settlement terms in a letter agreement designed to "resume normal business relations" between the two companies. *Id.* at 106. The agreement required that Olhausen "cancel" the Settlement Agreement. *Id.*

In early 2000, while preparing to open a new store in North Carolina, Game World contacted Olhausen to ensure that the new store would be supplied with Olhausen products. When Olhausen represented that it would supply its products, Game World made considerable expenditures in reliance on this promise. Olhausen reneged on this promise, and it sought other North Carolina retailers to sell its products.

Game World then sued Olhausen in North Carolina Superior Court. After the action was removed to the Eastern District of North Carolina, Game World filed an amended complaint alleging breach of the exclusive distributorship agreement and unfair trade practices, *see* N.C. Gen. Stat. § 75-1.1 (2001). Olhausen moved to dismiss Game World's complaint, relying on N.C. Gen. Stat. § 75-4, which states in relevant part:

> No contract or agreement hereafter made, limiting the rights of any person to do business anywhere in the State of North Carolina shall be enforceable unless such agreement is in writing duly signed by the party who agrees not to enter into any such business within such territory.[2]

The district court agreed with this argument and granted the motion to dismiss.

## II.

Game World contends that the district court erred in ruling that § 75-4 bars its claims. We agree.

We review de novo the decision of the district court to grant a motion to dismiss for failure to state a claim upon which relief may be granted. *See Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). This court accepts as true the facts alleged in the complaint, views them in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 & n.4 (4th Cir. 1993) (internal quotation marks omitted). Although matters outside the complaint are generally not considered, a narrow exception to this rule allows consideration

---

[2]Olhausen also argued that to the extent Game World sought to sue for breach of the Settlement Agreement, its suit should be dismissed for lack of jurisdiction, based on a forum selection clause in that agreement. However, Game World responded that its claims were not based upon a breach of the Settlement Agreement.

of "documents the authenticity of which [is] not disputed by the parties." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Olhausen first contends that the 1985 letter did not satisfy § 75-4 because the letter did not state that Game World provided any consideration to Olhausen. This argument is at odds with North Carolina law. A document signed by one party and describing that party's obligation suffices under § 75-4 to support an action against that party. *See Lewis v. Murray*, 97 S.E. 750, 751 (N.C. 1919); *Miller v. Irvine*, 18 N.C. (1 Dev. & Bat.) 103, 1834 WL 455, at *1 (1834). It is not necessary that the writing contain the signature or the obligations of the party seeking to enforce the agreement. *See Miller*, 1834 WL 455, at *1; *Purchase Nursery, Inc. v. Edgerton*, 2002 WL 31055792, at *4 (N.C. Ct. App. Sept. 17, 2002). Nor must the writing recite the consideration given by that party. *See Brooks Distrib. Co. v. Pugh*, 378 S.E.2d 31, 31 (N.C. 1989) (per curiam) (adopting dissent in *Brooks Distrib. Co. v. Pugh*, 373 S.E.2d 300, 306 (N.C. Ct. App. 1988) (Cozort, J., dissenting in part)); *Green v. Thornton*, 49 N.C. (4 Jones) 230, 1856 WL 1696, at *2 (1856).

Olhausen next argues that § 75-4 was not satisfied because the 1985 letter did not state the terms under which Game World would purchase Olhausen's products. This argument also fails. Section 75-4 only requires written documentation of the promise to limit rights to do business in North Carolina. The statute does not pertain to other aspects of the parties' business relationship. *Cf. Manpower of Guilford County, Inc. v. Hedgecock*, 257 S.E.2d 109, 113-14 (N.C. Ct. App. 1979) (holding that only covenant to limit right to conduct business need be in writing to satisfy § 75-4, even when that covenant was part of a broader agreement).

Finally, we reject Olhausen's contention that because the 1985 letter bound Olhausen for only one year, it did not satisfy § 75-4. Olhausen's written obligation was not limited to one year. Rather, the 1985 letter explicitly granted Game World an exclusive distributorship of *indefinite duration*, so long as Game World "demonstrated a reasonable effort" in marketing Olhausen's products. Thus, the letter satisfies the statute.

## III.

In sum, because we hold that the district court erred in ruling that § 75-4 barred Game World's suit, we reverse the order dismissing the action and remand for further proceedings.[3]

*REVERSED AND REMANDED*

---

[3]We do not address Olhausen's contention, raised for the first time at oral argument, that the Settlement Agreement terminated any agreement memorialized in the 1985 letter. Also, because we hold that the district court erred in ruling that the statute of frauds barred Game World's action, we do not reach Game World's other arguments.