Bite Busters, LLC v. Burris, 2021 NCBC 19.

STATE OF NORTH CAROLINA

MOORE COUNTY

BITE BUSTERS, LLC,

          Plaintiff,

    v.

CLIFFORD S. BURRIS,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 899

**ORDER AND OPINION ON DEFENDANT'S
MOTION TO DISMISS**

1. **THIS MATTER** is before the Court on Defendant Clifford S. Burris's ("Burris" or "Defendant") Motion to Dismiss (the "Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") in the above-captioned case. (ECF No. 13.)

2. Plaintiff Bite Busters, LLC ("Bite Busters" or the "Company") alleges that Burris violated an Employee Confidentiality, Non-Compete, and Invention Assignment Agreement (the "Agreement") that he signed as a condition of his employment at Bite Busters and unfairly competed against the Company after forming his own company. (Verified Compl., Mot. TRO & Preliminary Inj. ¶¶ 68–104 [hereinafter "Compl."], ECF No. 3.)

3. Burris seeks to dismiss all of Bite Busters's claims, contending that Bite Busters has failed to state valid claims for breach of the non-competition and employee non-solicitation provisions of the Agreement, tortious interference with contract, and violation of both the North Carolina Trade Secrets Protection Act

("NCTSPA") and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (Br. Supp. Def.'s Mot. Dismiss 9–16, ECF No. 14.)

4. Having considered the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

> *Meynardie & Nanney, PLLC, by Joseph H. Nanney, for Plaintiff Bite Busters, LLC.*

> *Vennum PLLC, by Liz Vennum, for Defendant Clifford S. Burris.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

5. Under Rule 12(b)(6), "[t]he Court does not make findings of fact on motions to dismiss[.]" *Gallaher v. Ciszek*, 2020 NCBC LEXIS 124, at \*2 (N.C. Super. Ct. Oct. 16, 2020). Instead, the Court recites only those facts alleged in the Complaint relevant to the Court's determination of the Motion.

6. Bite Busters is a limited liability company formed and operating under the laws of this State with its principal place of business in Moore County, North Carolina.[1] (Compl. ¶ 3.) The Company alleges that it provides outdoor pest control services "mainly in Moore County, Stanly County, Richmond County, Montgomery County, Anson County, and Scotland County, North Carolina[.]" (Compl. ¶¶ 5, 7.)

---

[1] The Agreement describes the Company's principal places of business as Aberdeen, North Carolina and West Palm Beach, Florida. (Compl. Ex. A (preamble).)

7.    Burris is a citizen and resident of Stanly County, North Carolina.  (Compl. ¶ 8.)  Bite Busters hired Burris in August 2019 as a technician to provide outdoor pest control services.  (*See* Compl. ¶¶ 5, 14–15, 18, 20.)  In conjunction with his hiring, Burris signed the Agreement on 23 August 2019, prior to beginning work for the Company.  (Compl. ¶ 24, Ex. A.)

8.    The Agreement contains a set of non-competition provisions, which provide as follows:

> Non-Competition: Employee agrees not to, directly or indirectly, enter into, or in any manner take part in, [sic] similar business, profession, or other endeavor, which competes with the Company during the course of employment and for a period of 5 years thereafter, within the geographical limit of 200 miles of Company's principal place of business specified above.
>     i.   Customers: Solicit the trade or patronage of any customers or prospective customers or suppliers of Company with respect to any technologies, services, products, trade secrets, or other matters in which Company is actively involved or becomes involved during the term of Employee's employment with the Company; or
>     ii.  Competitors: Engage in any business or employment, or aid or endeavor to assist any third party, which is in competition with the products and/or services of Company.

(Compl. ¶ 26, Ex. A ¶ 3(a).)

9.    The Agreement also contains a non-solicitation provision, which states:

> Non-Solicitation: Employee agrees not to, directly or indirectly, during the course of employment or for a period of 5 years thereafter, solicit or aid third parties to solicit any employee or consultant of Company to leave their employment or engagement with Company in order to accept employment of any kind with any other person, including, but not limited to, any firm, company, partnership, or corporation.

(Compl. ¶ 30, Ex. A ¶ 3(b).)

10.  Bite Busters alleges that at some point in early 2020 and without Bite Busters's knowledge, Burris began advising various Bite Busters customers that he was starting a competing business.  (Compl. ¶¶ 33–34.)  Burris launched this competing business in March or April 2020, (Compl. ¶ 35), and resigned from the Company on 24 April  2020, (Compl. ¶ 37).

11.  Bite Busters first learned of Burris's competing business when some of Bite Busters's customers informed the Company that Burris had solicited them to do business with his new company.  (Compl. ¶¶ 38, 45.)  A few of the solicited customers switched their business from Bite Busters to Burris's company.  (Compl. ¶¶ 38, 45; *see also* Aff. Larry Watkins[2] ¶ 6, ECF No. 5.)  Bite Busters later discovered that Burris set up a Facebook page called "Mosquito Man," where he advertised his new firm's competing services.  (Compl. ¶ 59, Ex. C.)

12.  One Bite Busters customer, Larry Watkins, reported to the Company that Burris falsely told him that "Bite Busters was doing improper applications that were dangerous to people and pets" and that "the chemicals that Bite Busters uses are harmful to animals and plants."   (Compl. ¶¶ 46–49; *see also* Aff. Larry Watkins ¶ 9.)

13.  One of the Company's employees, Amedeo L. Camarco ("Camarco"), also reported to the Company that Burris told him that Burris was starting a competing

---

[2] Plaintiff's Complaint references and relies upon the affidavit of Larry Watkins, (*see* Compl. ¶¶ 43, 45), thus the Court may consider the affidavit on this Motion, *see, e.g.*, *Schlieper v. Johnson*, 195 N.C. App. 257, 261 ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment.").

business and that Burris had asked Camarco to terminate his employment with the Company and come to work for Burris's competing business. (Compl. ¶¶ 62–63.)

14. Bite Busters initiated this action on 25 August 2020. (*See* Compl.) Burris filed the current Motion seeking dismissal of Bite Busters's claims on 26 October 2020. (Def's Mot. Dismiss. 1) After full briefing, the Court held a hearing on the Motion on 17 December 2020 (the "Hearing") via WebEx videoconference, at which all parties were represented by counsel. The following day, the Court, with the parties' consent, entered an order permitting limited discovery and deferring its ruling on the Motion through 28 February 2021 to assist the parties' efforts in pursuing early mediation and potential settlement of this action. (Interim Case Management Order, ECF No. 27.) Those efforts have resulted in an impasse, however, and the Motion is now ripe for resolution.

## II.

## LEGAL STANDARD

15. "A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.' " *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991)). Accordingly, the Court must view the allegations in the complaint "in the light most favorable to the non-moving party." *Christenbury*

*Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (quoting *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 852 (2016)).

16. "When considering a [Rule] 12(b)(6) motion to dismiss, the trial court need only look to the face of the complaint to determine whether it reveals an insurmountable bar to plaintiff's recovery." *Kemp v. Spivey*, 166 N.C. App. 456, 461 (2004) (quoting *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 527 (1991)). Further, "the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (quoting *Meyer v. Walls*, 347 N.C. 97, 111–12 (1997)); *see also Strickland v. Hedrick*, 194 N.C. App. 1, 20 (2008) ("[T]o prevent a Rule 12(b)(6) dismissal, a party must . . . state enough to satisfy the substantive elements of at least some legally recognized claim." (citation and internal quotation marks omitted)).

17. Therefore, dismissal of a complaint under Rule 12(b)(6) is proper only when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Krawiec v. Manly*, 370 N.C. 602, 606 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)).

III.

ANALYSIS

A.    Breach of Contract (Non-Compete)

18.    Burris contends that Bite Busters's claim for breach of the non-competition provisions in paragraph 3(a) of the Agreement should be dismissed because the provisions Bite Busters seeks to enforce are invalid as a matter of North Carolina law.  The Court agrees.

19.    As an initial matter, "[i]t is well established that '[a] covenant in an employment agreement providing that an employee will not compete with his former employer is not viewed favorably in modern law.' "  *Sterling Title Co. v. Martin*, 266 N.C. App. 593, 597 (2019) (quoting *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 311 (1994)).  Nevertheless, a covenant not to compete will be enforced if it is "(1) in writing; (2) reasonable as to time and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) designed to protect a legitimate business interest of the employer." *Young v. Mastrom, Inc.*, 99 N.C. App. 120, 122–23, *disc. review denied*, 327 N.C. 488 (1990).  "The reasonableness of a non-competition covenant is a matter of law for the court to decide."  *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655 (2009).

20.    Paragraph 3(a) provides that Burris may not, either "directly or indirectly, enter into, or in any manner take part in, [sic] similar business, profession, or other endeavor, which competes with the Company during the course of employment and for a period of 5 years thereafter, within the geographical limit of 200 miles of

Company's principal place of business." (Compl. Ex. A ¶ 3(a).) That sentence is then followed by two incomplete sentences that appear as numbered subparagraphs with apparent (but not express) limitations, one as to "Customers" ("Solicit the trade or patronage of any customers . . . of Company[,]" (Compl. Ex. A, at ¶ 3(a)(i))), and the other as to "Competitors" ("Engage in any business or employment . . . which is in competition with . . . Company[,] (Compl. Ex. A 3(a)(ii))).[3] These provisions are unenforceable as a matter of North Carolina law for several reasons.

21.   First, paragraph 3(a) unreasonably restricts Burris's business activities because it prohibits him from "directly or indirectly" taking part "in any manner" in a similar business, without regard to whether Burris is employed in a similar position at that business or the services he provides at that business are the same as those he provided at Bite Busters. *See, e.g.*, *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 509 (2004) (holding unenforceable a restriction that prevented the employee "from doing even wholly unrelated work at any firm similar to [the employer]"); *Hartman*, 117 N.C. App. at 317 (holding unenforceable a restriction "that, rather than attempting to prevent [the former employee] from competing for . . . business, it require[d] [the former employee] to have no association whatsoever with any business that provides [similar] services."); *Ridgway*, 194 N.C. App. at 656 (holding unenforceable restrictions that "prohibit the employee from engaging in future work that is distinct from the duties actually performed by the employee"); *Window Gang Ventures, Corp.*

---

[3] Although it is debatable whether subparagraphs 3(a)(i) and 3(a)(ii) restrict Burris's activities due to their lack of express prohibitory language, even if they can be read to do so, each, as explained below, is unenforceable under North Carolina law.

*v. Salinas*, 2019 NCBC LEXIS 24, at \*20 (N.C. Super. Ct. Apr. 2, 2019) (holding unenforceable a provision restricting employees from working for competitors "in any capacity whatsoever—not simply in roles which would cause competitive harm to [the employer] or only in divisions of those businesses which compete with [the employer]").

22.    Next, paragraph 3(a)'s geographic restriction is also unreasonable as a matter of law. "A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining [its] customers." *Hejl v. Hood, Hargett & Assocs., Inc.*, 196 N.C. App. 299, 306 (2009) (quoting *Manpower, Inc. v. Hedgecock,* 42 N.C. App. 515, 523 (1979)). "Ordinarily, a covenant's geographic scope will be found reasonable if it encompasses the area served by the business that the covenant protects[.]" *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 698 (2016) (citing *Thompson v. Turner*, 245 N.C. 478, 481–82 (1957)).

23.    Bite Busters has alleged that its customers are located in "Moore County, Stanly County, Richmond County, Montgomery County, Anson County, and Scotland County, North Carolina[.]" (Compl. ¶ 7.) Yet the territory prohibited to Burris under the Agreement extends 200 miles from the Company's principal place of business, which is alleged in the Complaint as Moore County, North Carolina but defined in the Agreement as both Aberdeen, North Carolina (which is in Moore County) and West Palm Beach, Florida. (Compl. ¶ 3, Ex. A (preamble).) The Court takes judicial notice that the geographic territory extending 200 miles from Moore County, North

Carolina includes all but the westernmost counties of North Carolina, nearly all of South Carolina, and a large portion of Virginia, including the cities of Roanoke, Richmond, and Norfolk. For good measure, the territory extending 200 miles from West Palm Beach, Florida includes the southern half of Florida as well as a large portion of the Bahamas.

24.    It merely states the obvious to note that the six-county area in central North Carolina in which Bite Busters alleges it has customers is far smaller than the vastly more expansive territory it seeks to protect from Burris's competitive activities in the Agreement. Even if Burris serviced customers in the Company's entire six-county operating area, Bite Busters's prohibited territory under the Agreement far exceeds any reasonable geographic limitation on Burris's competitive activities that is necessary to protect the Company's legitimate business interests. *See, e.g.*, *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 281 (2000) ("The employer must show that the territory embraced by the covenant is no more than necessary to secure the protection of its business[.]"). As such, the Court concludes that on the facts as pleaded, the territory in the Agreement is unreasonable as a matter of law. Where, as here, "the scope of the client-based territorial restriction . . . is unreasonable," it "thereby render[s] the non-compete agreement unenforceable." *Farr Assocs., Inc.*, 138 N.C. App. at 283.

25.    The Court also concludes that the Agreement's five-year restrictive period is unenforceable as a matter of law on the pleaded facts. North Carolina courts only enforce five-year employment covenants "*under extreme conditions*," *Hartman*, 117

N.C. App. at 315 (quoting *Eng'g Assocs., Inc. v. Pankow*, 268 N.C. 137, 139 (1966)), and no "extreme conditions" have been pleaded to support the five-year term here, *see, e.g.*, *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *46–47 (N.C. Super. Ct. Nov. 3, 2011) (holding a non-compete clause unenforceable where "[t]here [we]re no special circumstances pled that would allow the Court to determine that a five-year restriction is reasonable").

26.    The unreasonableness of paragraph 3(a)'s time restriction is all the more apparent when the Court considers that the paragraph purports to restrict Burris from soliciting "any customers . . . with respect to . . . matters in which Company is actively involved or becomes involved *during the term of Employee's employment* with the Company[.]" (Compl. Ex. A ¶ 3(a)(i) (emphasis added).)  Because the provision looks back to the beginning of Burris's employment in August 2019, North Carolina courts deem the restriction as actually extending for five years and eight months. *See, e.g.*, *Farr Assocs., Inc.*, 138 N.C. App. at 280 ("[W]hen a non-compete agreement reaches back to include clients of the employer during some period in the past, that look-back period must be added to the restrictive period to determine the real scope of the time limitation.").  Thus, the actual time period of the Company's restriction is beyond the five-year period our courts have enforced only "under extreme conditions." *See, e.g.*, *Sterling Title Co.*, 266 N.C. App. at 599 (holding restriction unenforceable because it restricted defendant "from soliciting or providing competitive services to any of [p]laintiff's customers with whom she had contact during her employment, a period of roughly ten years.").

27.     Subparagraphs 3(a)(i) and 3(a)(ii) contain non-solicitation provisions that are unenforceable for similar reasons.  Non-solicitation provisions " 'must meet the same requirements as are applied to . . . covenant[s] not to compete[,]' including that they be 'reasonable as to time and territory.' "  *Window Gang Ventures, Corp.*, 2018 NCBC LEXIS 18, at *28 (quoting *Aeroflow Inc. v. Arias*, 2011 NCBC LEXIS 21, at *24 (N.C. Super. Ct. July 5, 2011)).

28.     Paragraph 3(a)(i) purports to restrict Burris from "[s]olicit[ing] the trade or patronage of any customers or prospective customers and suppliers of the Company with respect to any technologies, services, products, trade secrets, or other matters in which Company is actively involved or becomes involved during the term of Employee's employment with the Company[.]"  (Compl. Ex. A ¶ 3(a)(i).)  This Court has recognized that "North Carolina[ ] courts will enforce a covenant prohibiting a former employee from soliciting his former employer's customers even when not tied to a specific geographic region where 'the terms and conditions of this contract clause were reasonably necessary to protect the employer's legitimate business interests.' "  *Sandhills Home Care, L.L.C. v. Companion Home Care - Unimed, Inc.*, 2016 NCBC LEXIS 61, at *25–26 (N.C. Super. Ct. Aug. 1, 2016) (quoting *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 229 (1990)).  But where, as here, a non-solicitation clause "reaches not only clients, but potential clients, and extends to areas where [p]laintiff had no connections or personal knowledge of customers, the [provision] is

unreasonable." *Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar*, 264 N.C. App. 260, 272–73 (2019) (quoting *Hejl*, 196 N.C. App. at 307).[4]

29. Paragraph 3(a)(ii) appears to restrict Burris from "[e]ngag[ing] in any business or employment, or aid[ing] or endeavor[ing] to assist any third party, which is in competition with the products and/or services of Company." (Compl. Ex. A ¶ 3(a)(ii).) As explained in connection with paragraph 3(a) above, however, such a provision—which restricts Burris from working for a competitor in a position different from the position he held at the Company and from providing services unlike those he performed at the Company—is unreasonable as a matter of law and shall not be enforced. *See, e.g.*, *VisionAIR, Inc.*, 167 N.C. App. at 509; *Hartman*, 117 N.C. App. at 317.

30. For each of these reasons, therefore, the Court concludes that the Company's claim for breach of contract based on the non-competition and customer non-solicitation provisions of paragraph 3(a) of the Agreement and its subparagraphs should be dismissed under Rule 12(b)(6).[5]

---

[4] Paragraph 3(a)(i)'s restriction on solicitation of suppliers is unreasonable as a matter of law for the same reason.

[5] Although not requested by Bite Busters, the Court notes that it is precluded from blue penciling paragraph 3(a) and its subparagraphs because they do not contain distinctly separable parts. *See Hartman*, 117 N.C. App. at 317 ("A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.").

B.      Breach of Contract (Non-Solicitation of Employees)

31.     Burris next contends that the same deficiencies that doomed Bite Busters's claim for breach of paragraph 3(a) compel the dismissal of its claim for breach of the non-solicitation of employees provision in paragraph 3(b) of the Agreement.

32.     "Courts in North Carolina have recognized that reasonable restrictions on a former employee's right to solicit an employer's current employees are enforceable[,]" as such provisions are simply "another means of protecting the former employer's interest in the good-will it has with its customers." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 2018 NCBC LEXIS 42, at \*26–28 (N.C. Super. Ct. May 8, 2018), *aff'd*, 372 N.C. 260 (2019); *see also, e.g.*, *Kennedy v. Kennedy*, 160 N.C. App. 1, 11 (2003) ("[T]he covenant prohibiting [defendant] from soliciting and hiring plaintiff's former employees for the three-year period does not violate public policy.") Nevertheless, "[a] restriction on solicitation of employees generally is subject to the same requirements as other restrictive covenants." *Wells Fargo Ins. Servs. USA, Inc.*, 2018 NCBC LEXIS 42, at \*27. Thus, "[t]o establish that a non-solicitation of employees covenant is reasonable, an employer must establish that it has a protectable business interest in prohibiting solicitation of former employees, and such prohibition must be no broader than necessary to protect that interest." *Id.* at \*28; *see, e.g.*, *Ridgway*, 194 N.C. App. at 657 (holding unenforceable a prohibition on defendant's solicitation of employees of plaintiff's affiliate for which defendant did not work).

33.     Paragraph 3(b) of the Agreement provides that Burris may not "directly or indirectly, during the course of employment or for a period of 5 years thereafter, solicit

or aid third parties to solicit any employee or consultant of Company to leave their employment or engagement with Company in order to accept employment of any kind with any other person[.]"  (Compl. Ex. A ¶ 3(b).)  This language is substantially similar to the language of paragraph 3(a) and its subparagraphs, and the Company's counsel asserted at the Hearing that its claim for breach of paragraph 3(b) should rise and fall with its claim for breach of paragraphs 3(a), 3(a)(i), and 3(a)(ii).  The Court agrees.

34.  In particular, the Court concludes that paragraph 3(b)'s prohibition of Burris's "direct[ ] or indirect[ ]" solicitation of the Company's employees for a period of five years after the termination of his employment—regardless of whether the employees were current Company employees, whether the employees worked in the same territories in which Burris worked, whether Burris ever worked with the employees, or whether the employees provided services or developed relationships for Bite Busters that would be of value to a competitive business—is unreasonable as a matter of law on the pleaded facts.  Nothing on the face of the Complaint nor in the Agreement suggests that such a restriction is necessary to protect the Company's legitimate business interests, and the Company has not contended that a legitimate business interest supports the restriction in its briefing or oral argument.  For each of these reasons, therefore, the Court concludes that Bite Busters's claim for breach of contract based on paragraph 3(b) of the Agreement must be dismissed.

C.   Violation of the NCTSPA

35.   Burris next seeks the dismissal of Bite Busters's claim for misappropriation of trade secrets under the NCTSPA. (Compl. ¶¶ 84–96.) "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326 (2008)). Therefore, "a complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Id.* at 610 (quoting *Washburn*, 190 N.C. App. at 327).

36.   The NCTSPA defines a "[t]rade secret" as:

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3).

37.   Our courts consider the following factors in determining whether a plaintiff has successfully pleaded a cognizable trade secret:

> (1) [t]he extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the

business; (3) the extent of measures taken to guard secrecy of the information; [(4)] the value of information to business and its competitors; [(5)] the amount of effort or money expended in developing the information; and [(6)] the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180-81 (1997) (citations omitted). "These factors overlap, and courts do not always examine them separately and individually." *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at *19 (N.C. Super. Ct. Nov. 4, 2020) (citation omitted). "Information will not merit trade secret protection where the information is 'either generally known in the industry . . . or [is] readily ascertainable by reverse engineering.'" *Sterling Title Co.*, 266 N.C. App. at 601 (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470 (2003)).

38. The NCTSPA defines "misappropriation" as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C.G.S. § 66-152(1). Further, "[a] complaint must contain allegations, identifying with specificity, 'the acts by which the alleged misappropriations were accomplished.'" *Strata Solar, LLC v. Naftel*, 2020 NCBC LEXIS 129, at *9 (N.C. Super. Ct. Oct. 29, 2020) (quoting *Washburn*, 190 N.C. App. at 327).

39. Bite Busters alleges that its trade secrets "includ[e] but [are] not limited to its processes, procedures, customer lists and other trade secrets," (Compl. ¶ 85), and that "Defendant, while an employee of Bite Busters, misappropriated those trade

secrets," (Compl. ¶ 88). These allegations are insufficient to survive Rule 12(b)(6) scrutiny. *See Krawiec*, 370 N.C. at 609 (requiring trade secret identification with "sufficient particularity").

40. First, the courts of this State routinely dismiss NCTSPA claims broadly asserting that a plaintiff's processes and procedures constitute its trade secrets because, without more, such allegations do not identify with sufficient particularity the trade secrets the defendant allegedly misappropriated. *See, e.g.*, *Washburn*, 190 N.C. App. at 327 (concluding that trade secrets comprised of "business methods; clients, their specific requirements and needs; and other confidential information" failed to identify alleged trade secrets with sufficient specificity); *Analog Devices, Inc.*, 157 N.C. App. at 468–69 (concluding that "general claims concerning areas of [plaintiff's] production and design" failed to identify alleged trade secrets with reasonable particularity); *Window Gang Ventures, Corp.*, 2019 NCBC LEXIS 24 at *43 (concluding that trade secrets comprised of "[i]nformation regarding [plaintiff's] proprietary equipment and chemical cleaning solutions" failed to identify alleged trade secrets with sufficient particularity); *Edgewater Servs., Inc. v. Epic Logistics, Inc.*, 2009 NCBC LEXIS 21, at *9, *11 (2009) (concluding that "formulae, patterns, programs, devices, compilations of information, methods, techniques and processes," failed to identify alleged trade secrets with sufficient particularity (citation and internal quotation marks omitted)).

41. Bite Busters's identification of its "customer lists" trade secret, however, fares better. Our Supreme Court has held that customer lists may, in certain

circumstances, constitute a trade secret, *see Krawiec*, 370 N.C. at 610, provided that the plaintiff "allege[s] that the lists contained . . . information that would not be readily accessible to defendant[ ,]" *id.* at 611. Here, Bite Busters specifically alleges that "[Burris] would not have had access to customer contact information, including addresses, telephone numbers, and e-mail addresses, had he not been employed by Bite Busters[,]" (Compl. ¶ 22), and supports this assertion with additional factual allegations identifying various measures the Company took to protect this information from anyone other than an employee with a need to know, including by locking doors, limiting access to computers, and requiring employees to execute nondisclosure agreements, (Compl. ¶¶ 23, 28). The Court finds these allegations sufficient to satisfy the identification requirement set forth in *Krawiec*.

42. Despite satisfying its burden to sufficiently plead its customer list trade secret, however, Bite Busters's trade secret claim nonetheless fails because the Company has failed to allege "the acts by which the alleged misappropriations were accomplished." *Strata Solar, LLC*, 2020 NCBS LEXIS 129, at *9 (quoting *Washburn*, 190 N.C. App. at 327). Indeed, Bite Busters has not pleaded how Burris accessed or acquired the Company's trade secrets when he was not authorized to do so or how he used Bite Busters's trade secrets without authorization. To the contrary, the Company's only allegation concerning misappropriation is general and conclusory: "Defendant, while an employee of Bite Busters, misappropriated those trade secrets, acquiring them to use in his competing business to unfairly compete with Bite Busters." (Compl. ¶ 88.) Our courts have made clear that such allegations are

insufficient to survive Rule 12(b)(6) scrutiny. *See, e.g., Washburn*, 190 N.C. App. at 327 (holding that "general and conclusory" allegations of misappropriation are insufficient to survive a motion under Rule 12(b)(6)); *see also Strata Solar, LLC*, 2020 NCBC LEXIS 129, at *11–12 (holding that when a "[p]laintiff does not allege any specific acts by [defendants] to show that they accessed, disclosed, or used [p]laintiff's trade secrets without [p]laintiff's authorization[,]" a trade secret misappropriation claim necessarily fails).

43. Accordingly, for the reasons discussed above, Bite Busters's NCTSPA claim must be dismissed. Nevertheless, given that Bite Busters has not yet amended its Complaint and based on counsel's representations at the Hearing that the failures of pleading identified above may be cured through repleading, the Court will dismiss the Company's trade secret claim without prejudice[6].

D. <u>Tortious Interference with Business and Contractual Relationships</u>

44. Burris next seeks to dismiss Bite Busters's claim for tortious interference with the Company's business and contractual relationships. The Company bases its claim on Burris's alleged conduct in soliciting the business of Bite Busters's customers in violation of his contractual obligations to the Company, including by "defaming Bite Busters[.]" (Compl. ¶¶ 76–83.)

---

[6] Notwithstanding the Court's conclusion that this claim should be dismissed, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013). The Court concludes, in the exercise of its discretion, that dismissal of Bite Busters's NCTSPA claim should be without prejudice to its right to attempt to reassert that claim through proper factual allegations consistent with Rule 12.

45.    Under North Carolina law, a plaintiff bringing a tortious interference with contract claim must allege more than "an expectation of a continuing business relationship" with a third party to survive dismissal under Rule 12(b)(6). *Dalton v. Camp*, 353 N.C. 647, 655 (2001). Rather, a plaintiff must plead:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Krawiec*, 370 N.C. at 606–07 (quoting *United Labs. v. Kuykendall*, 322 N.C. 643, 661 (1988)).

46.    Although Bite Busters has alleged that it has "developed . . . contractual relationships with its customers[,]" (Compl. ¶ 77), and that Burris approached customers of Bite Busters and advised them that he would begin a competing business, (Compl. ¶ 33), the Company nowhere pleads specific facts showing that Burris knew of the particular contractual relationships with customers on which Bite Busters's claim is based. Such a failure of pleading requires that the claim be dismissed. *See, e.g.*, *Salon Blu, Inc. v. Salon Lofts Grp., LLC*, 2018 NCBC LEXIS 72, at *12 (N.C. Super. Ct. July 16, 2018) ("[W]hen alleging a claim for tortious interference with contract, it is not enough to broadly allege that the defendant[ ] had 'knowledge of the contract[ ]'; rather, a complaint must contain 'facts sufficient to make a good claim' that the defendant[ ] knew of the contract[ ] at issue." (quoting *Krawiec*, 370 N.C. at 606–07)). As both parties admitted at the Hearing, however, it

appears that these pleading deficiencies can be cured. The Court will therefore dismiss this claim without prejudice.

E. Violation of the UDTPA (Section 75-1.1)

47. Bite Busters's final claim is for violation of the UDTPA, N.C.G.S. § 75-1.1, (Compl. ¶¶ 97–104), and is based on a variety of alleged misconduct, including that Burris (i) "misrepresented to customers that he had the right to start a competing business," (Compl. ¶ 100), (ii) "us[ed] the confidential trade secret information that belongs to Bite Busters," (Compl. ¶ 100), and (iii) falsely represented to a Bite Busters customer that Bite Busters used "improper applications that were dangerous to people and to pets[,]" (Compl. ¶¶ 46-47), and chemicals that were "harmful to animals and to plants[,]" (Compl. ¶¶ 48-49).

48. To "establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88 (2013) (quoting *Dalton*, 353 N.C. at 656).

49. As an initial matter, to the extent the Company's UDTPA claim is premised on the success of its claims for tortious interference and misappropriation of trade secrets, the failure of those claims, as discussed above, is fatal to the Company's claim under Chapter 75. *See, e.g.*, *Krawiec*, 370 N.C. at 613 ("Because we determined that plaintiffs failed to state a valid claim for tortious interference with contract or misappropriation of trade secrets, we necessarily must conclude that plaintiffs also

failed to adequately allege that [defendants] committed an unfair or deceptive act or practice [based on those claims]." (citation and internal quotation marks omitted)). Similarly, because the Court has dismissed the Company's breach of contract claims, the Company's UDTPA claim shall also be dismissed to the extent it is based on Burris's alleged breach of contract.

50. In addition, to the extent Bite Busters bases its UDTPA claim on its allegations that Burris misrepresented to customers his right to start a competing business and thereby induced those customers to take actions that harmed the Company, that claim, too, must fail. Our appellate courts have made clear that where, as here, a plaintiff asserts a misrepresentation-based UDTPA claim, the plaintiff must plead "reliance on the misrepresentation in order to show the necessary proximate cause[,]" *Bumpers*, 367 N.C. at 88, and, in particular, that "the plaintiff [has] affirmatively incorporated the alleged misrepresentation into his or her decision-making process[,]" *id.* at 90.

51. Because Bite Busters has failed to allege that the Company relied on Burris's alleged misrepresentation, the Company's UDTPA claim must be dismissed to this extent. *See, e.g.*, *D C Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 848 S.E.2d 552, 562 (N.C. Ct. App. 2020) ("It is clear from [*Bumpers*] that only the direct reliance of the plaintiff is sufficient to support a UDTP[A] claim based on misrepresentation. The holding in *Bumpers* precludes a UDTP[A] claim . . . in which a third party's reliance caused damage to the plaintiff.").

52. The Court reaches a different conclusion, however, concerning Bite Busters's allegation that Burris falsely stated to a customer that the Company's chemicals and applications caused harm to plants, animals, and humans. (Compl. ¶¶ 46–49.) Such alleged statements, if false, impeach the Company in its trade or business and can support a claim for slander *per se*. *See, e.g.*, *Taube v. Hooper*, 840 S.E.2d 313, 317 (N.C. Ct. App. 2020) ("Slander *per se* is an oral communication to a third person which amounts to . . . an allegation that impeaches the plaintiff in his trade, business, or profession[.]" (citation omitted)). Our courts have recognized that slander *per se* may constitute an unfair trade practice under section 75-1.1. *See Ausley v. Bishop*, 133 N.C. App. 210, 216 (1999) (holding that "slander *per se* may constitute a violation of section 75-1.1"); *see also, e.g.*, *Ellis v. N. Star Co.*, 326 N.C. 219, 226 (1990) (holding that "a libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1"); *Nguyen v. Taylor*, 219 N.C. App. 1, 9 (2012) (holding that "defam[ing] [plaintiffs] while profiting at their expense" may constitute an unfair trade practice under section 75-1.1).

53. Accordingly, because the Court concludes that the Company has pleaded sufficient facts which, if proven, would support a finding that Burris engaged in an unfair or deceptive act or practice "in or affecting commerce" that proximately caused injury to the Company by defaming the Company in its trade or business, Burris's motion to dismiss Bite Busters's UDTPA claim based on these allegations should be denied.

IV.

CONCLUSION

54. **WHEREFORE**, for the reasons set forth above, the Court hereby **ORDERS** as follows:

    a.    Defendant's Motion is **GRANTED** as to Bite Busters's claims for breach of contract (non-compete) and breach of contract (non-solicitation), and those claims are hereby **DISMISSED with prejudice**.

    b.    Defendant's Motion is **GRANTED** as to Bite Busters's claims for tortious interference with business and contractual relationships and violation of the North Carolina Trade Secrets Protection Act, and those claims are hereby **DISMISSED without prejudice**.

    c.    Defendant's Motion is **GRANTED** as to Bite Busters's claim for violation of section 75-1.1 (except to the extent that claim is based on the Company's allegations that Burris made false statements that defamed the Company in its trade or business), and that claim is hereby **DISMISSED without prejudice** to the extent that claim is based on Bite Busters's claims for tortious interference with business and contractual relationships and for violation of the North Carolina Trade Secrets Protection Act and **DISMISSED with prejudice** to the extent that claim is based on Bite Busters's claims for breach of contract (non-compete) and breach of contract (non-solicitation).

d.   Defendant's Motion is **DENIED** as to Bite Busters's claim for violation of section 75-1.1 to the extent that claim is based on the Company's allegations that Burris made false statements that defamed the Company in its trade or business, and that claim shall proceed to discovery.

**SO ORDERED**, this the 25th day of March, 2021.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge